(86 South. 311)

No. 23211.

## FOX v. UNITED CHEMICAL & ORGANIC PRODUCTS CO.

(June 30, 1920. Rehearing Denied Oct. 14, 1920.)

*(Syllabus by the Court.)*

**Master and servant** ⊙⟹375(2)—**Compensation allowable although extent of aggravation of injury by disease is not proved.**

Where, in an action by an employé under the Burke-Roberts Employers' Liability Act (Act No. 20 of 1914), as amended by Act No. 243 of 1916, for damages for personal injuries, the evidence shows that the injuries complained of were the immediate, proximate results of an accident which occurred in the course of plaintiff's employment, and fails to show the extent to which, if at all, the consequent physical disability of the plaintiff was aggravated by a disease with which he was thereafter found to be afflicted, or to what extent, if at all, the disease was accelerated or brought into activity by the accident, the plaintiff is properly allowed to recover in accordance with the provisions of the statute, and without regard to any hypothetical, but not proved, effects of the disease.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge Acting for T. C. W. Ellis.

Proceedings by William Fox against the United Chemical & Organic Products Company under the Employers' Liability Act. Judgment for plaintiff, and defendant appeals. Affirmed.

Edward Rightor and E. V. Parham, both of New Orleans, for appellant.

Edgar M. Cahn and Wm. F. Conkerton, both of New Orleans, for appellee.

MONROE, C. J. This is an appeal from a judgment condemning defendant to pay plaintiff $2,640 in 400 weekly payments of $6.60 each, commencing December 31, 1917 (less a credit of $61), together with the costs of the suit. The suit was brought under the

147 La.—28

"Burke-Roberts Employers' Liability Act," as amended, and the judgment is based upon an allowance of 50 per cent. of the weekly wages of the plaintiff for 400 weeks, as provided by section 8 (e) of that act, as re-enacted by Act 243 of 1916, p. 515. The $61 for which credit is given was paid prior to the suit; and, by way of answer to the demand for a continuation of the payments, defendant denied successively, but generally, the allegations contained in the various articles of the petition. It thereafter developed that its real defense is based upon its contention that plaintiff had recovered, when the suit was instituted, from the effects of the injury resulting from an accident which happened to him in the course of his employment, and since then, and now, is suffering from a chronic disease by which he was afflicted, and for which he was treated prior to the accident. The judge a quo accepted as a controlling precedent the judgment rendered by this court in the case of Behan v. John B. Honor Co., Ltd., 143 La. 348, 78 South. 589, L. R. A. 1918F, 862. In the instant case it is shown that plaintiff had been employed by defendant for perhaps eight or ten months as a laborer, and that during that time he had never lost a day or an hour; that upon the occasion of the accident he was carrying upon his shoulder a sack containing the bones and hoofs of horses, and that, in passing near a pit on his way through a passage, he was overbalanced by his load and fell into the pit; that there was in the pit a revolving pulley carrying a belt upon the outer surface of which at intervals of say, 18 inches there were pieces of wood, described as "paddles"; that, when plaintiff fell face down upon the bottom of the pit, he was struck by those paddles on his leg, his back, and other parts of his person in quick succession during a period of three or four minutes, until, by reason of some obstruction occasioned by the entanglement of

the sack that he had been carrying with the pulley, he was afforded an opportunity to escape. He was taken after a few days to the Charity Hospital, and later, at the instance of the physician who represents the indemnity company, real defendant in this case, to another hospital, both before and after which he was attended by another physician, who, as we understand, was selected by him. Those physicians differ rather widely in their opinions as to plaintiff's exact condition and the causes that brought it about. The physician employed by plaintiff, who saw and attended him first, found that he had been badly hammered and bruised, as can well be imagined from the uncontradicted description that he gives of the accident. The other, who saw him somewhat later, found no evidence of traumatic injury, and, having caused proper tests to be applied, ascertained that he was afflicted with a certain disease, in an active and virulent form, and that diagnosis was corroborated by the testimony of a third physician who examined the patient during the progress of the trial (about 4½ months after the accident), and who found him weak, anæmic, and shrunken, but, so far as he observed, showing no signs of traumatic injury. The physicians, however, agree that an experience such as plaintiff had in the pit, or in fact any severe physical shock, might develop or accelerate and aggravate the disease, which may have been otherwise latent or dormant, from which they found him to be suffering. They fully admit that there are many persons of many classes in this community and others who are affected with that disease, and who, in ignorance of their misfortune, discharge the functions of their various positions in the business and social life of which they form part with entire efficiency, and, whilst the witnesses prophesy that such persons must sooner or later break down, they are unable to fix the time in any given case when the break must occur, or to deny that it may be accelerated by injuries such as those sustained by plaintiff. Plaintiff testifies without contradiction that prior to the accident here in question he had enjoyed good health all of his life (of, say, 50 years), save that in 1913 he became for eight days an inmate of the Charity Hospital, where he was treated for rheumatism, and on one other later occasion suffered with sores upon his face and in his mouth, the origin of which he attributes to poisoning from mosquito bites, received while working in the swamps, and, concerning which he says that the physicians in the hospital said that they were unable to say whether it was the disease to which we have referred or cancer; the fact being that the particular sores of which he then complained were healed, and he went on with his work as he had done before, and at the time of the accident, so far as he knew, was in good health.

In the case of Behan v. John B. Honor Co., supra, it was held that (quoting from the syllabus, which accords with the text):

"The fact that an employé injured in performing service arising out of and incidental to his employment in the course of his employer's occupation was already afflicted with a dormant disease that might some day have produced physical disability is no reason why the employé should not be allowed compensation, under the employers' liability statute, for the injury which, added to the disease, superinduced physical disability."

In the text of the opinion it is said:

"The proof goes no further in support of the defense of this suit than to show that the plaintiff might, and perhaps would, at some time, have become disabled by the disease that was lurking in his system, even if the accident complained of had not happened. * * * The evidence leaves no doubt that the plaintiff's physical disability resulting from the accident is worse than it would be if he had not been diseased at the time of the accident. But the

accident was none the less the proximate cause of the present disability.",

And so it may be said here. For years before and up to the moment of the accident, with the exception of a few days in 1913 and a few days at a later period, plaintiff had been able to continue the hard manual labor in which he had been engaged all of his life. Since the accident he has been able to do no work at all. The physician who was first called (after he left the Charity Hospital) says in his testimony:

"I found him suffering from an injury from [to] his feet and entire body, the chest and back and legs. * * * I found the right leg very much swollen, and, I might say, it seemed there had been a pus formation on the inner side of the right leg, and there had been an incision, * * * and they had made an incision at the hospital, I presume. * * * Q. What was the size of the leg? A. Possibly one-third larger than its normal size. Q. What was his general condition? A. He was very weak and very nervous, and the injury seemed to have weakened him very much, and I found certain things the matter with his back and chest, which was tenderness and a slight swelling of the back and chest. * * * Q. From your medical experience and attention, do you think he will be able to go to work soon, or ever be able to go to work? A. No, sir; I don't think so."

Upon the whole, the evidence satisfies us, as it seems to have satisfied the trial judge, that the accident was the proximate cause of the disability which immediately followed, and which continued up to the time of trial, with a prospect of a further and indefinite continuance, and we are unable to determine to what extent, if at all, it was aggravated by the disease, and, if so, to what extent the disease was accelerated or brought into activity by the accident; the testimony, in our opinion, throwing little or no light upon that subject.

The judgment appealed from is therefore Affirmed.