No. 2390

Second Circuit Appeal

---

## LAURENCE R. CONNELL AND VELMA CONNELL v. GILLILAND OIL COMPANY

---

(June 27, 1925, Opinion and Decree)
(July 11, 1925, Rehearing Refused)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Master and Servant —Par. 154.**

Under Section 9, Paragraph 3, of the Workman's Compensation Act No. 20 of 1914, as amended by Act No. 38 of 1918, it is the duty of the court, upon the application of either party, to order an examination of the employee to be made by medical practitioners in case of dispute as to the condition of the employee.

2. **Louisiana Digest—Master and Servant —Par. 159, 160 (j).**

Where an injured employee is suing for compensation under the Workman's Compensation Act No. 20 of 1914, the fact that light work such as plowing made him go back to bed and use crutches determines the fact that his disability is total.

3. **Louisiana Digest—Master and Servant —Par. 158.**

If an old injury to an injured employee together with the new injury upon

which he is suing, contributed to produce the disability complained of that would not bar recovery.

**4. Louisiana Digest—Master and Servant —Par. 159, 159 (a).**

Where at the time of the rendition of the judgment the injured employee has not recovered, the court will not decide whether a total disability is only temporary but will give judgment for the period of disability not exceeding three hundred weeks.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo, Hon. Stephens, Judge.

This is a suit brought by the father and mother of an injured employee, a minor for compensation under the Workman's Compensation Act No. 20 of 1914, as amended by Act 216 of 1924. There was judgment for plaintiff for a smaller amount than sued for and plaintiff appealed.

Judgment amended and affirmed.

Long and Crow, of Shreveport, attorneys for plaintiff, appellant.

Alex F. Smith, of Shreveport, attorney for defendant, appellee.

CARVER, J. Plaintiffs, father and mother of Jarrell G. Connell, sue for compensation under the Workmen's Compensation Act (Act No. 20 of 1914, as amended by Act 216 of 1924) for injuries received August 21, 1924, by their son in an accident arising out of and in the course of his employment by defendant. They claim $20.00 a week for 400 weeks.

Defendant admits that Jarrel received injuries, but alleges that they have not and will not result in serious or permanent disability, and says it believes, and therefore alleges, that he has recovered.

The District Judge gave judgment for $20.00 a week during disability, not to exceed 300 weeks.

We are not informed whether the District Judge regarded the disability as only partial, therefore falling under Clause (c) or total but only temporary, and therefore falling under Clause (a).

Plaintiffs appeal, claiming it is total and permanent and therefore falls under Clause (b).

Defendant took an order of appeal but did not perfect it.

Section 8 of the Act, as amended by Act 216 of 1924, reads in part as follows:

"Section 8. (1) That for an injury producing disability compensation shall be paid under this Act to an injured employee in accordance with the following schedule of payments:

"(a) For injury producing total temporary disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not, however, beyond three hundred weeks.

"(b) For injury producing permanent total disability to do work of any reasonable character sixty-five per centum of wages during the period of disability, not, however, beyond four hundred weeks.

"(c) For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not, however, beyond three hundred weeks."

I.

## IS THE DISABILITY TOTAL?

The accident occurred August 21, 1924. The injured boy was sixteen or seventeen years old and for about eighteen months previous to the accident had been doing the work of a roustabout in an oil field which, the testimony shows, was hard, manual labor.

His father testified that he was a big, sturdy boy.

After the accident he had to lie in one position in bed for eight or nine days and could not turn over unassisted. On getting up he could walk around on crutches.

The testimony of his father and himself was taken December 11, 1924. Up to that time he had done no remunerative work since the accident except to sell hosiery in Haynesville, near which he lived at the time of the accident, and in Vivian, where he lived at the time of the trial. The returns from these sales were only fifteen or twenty dollars. In getting about he had to use crutches.

After introducing the testimony of the boy and his father the plaintiffs rested their case, and defendant's counsel announced that he had no evidence to offer. Thereupon the District Judge, on his own motion, appointed Doctor E. L. Sanderson to examine the injured boy and report his findings. Defendant's counsel objected to this and also objected to Doctor Sanderson's report when made.

We think these objections were properly overruled.

Paragraph 3 of Section 9 of the Compensation Act, as amended by Act No. 38 of 1918, makes it the duty of the court, upon the application of either party, to order an examination of the employee to be made by medical practitioners in case of dispute as to the condition of the employee.

We think the court had the right, without any application, in order to satisfy itself, to make the appointment.

Doctor Sanderson reported in writing as follows:

"December 11, 1924.
"Hon. J. H. Stephens,
"First District Court, Caddo Parish, La.

"Dear Sir—I have just completed the examination of Jarrell Connell, of Vivian, Louisiana, who claims to have been injured on August 21, 1924, while in the employ of the Gilliland Oil Co., at Haynesville, La.

"I find a well-nourished healthy-looking young man who claims to be unable to get about without crutches. In bending forward and sidewise the lumbar region of the spine is rigid. There is increased knee jerk, which indicates possible cord pressure. He has slight inco-ordination of the lower limbs, which suggests cord disturbance. The X-ray made by Doctor Barrow shows evidence of injury to the left transverse process of the fifth lumbar vertebra with slight forward displacement of the body of this vertebra.

"I think it reasonable to attribute his symptoms to the abnormality of the spine. However, I feel sure that he is exaggerating the effects considerably. But the abnormality is definite and, of course, is permanent, as pressure on the cord tends to degeneration instead of recovery.

"Very respectfully,
"E. L. SANDERSON,
"Hutchinson Building."

On January 29, 1925, further testimony was given by the boy and his father, and testimony by Doctor E. L. Sanderson, Doctor S. C. Barrow, Doctor W. L. Waller and Doctor Thomas Ragan was also taken.

Doctor Barrow explains that the injury to the fifth lumbar vertebra spoken of in Doctor Sanderson's report was a fracture which at the time the X-ray picture was taken had not become completely ossified.

He also corroborated Doctor Sanderson as to the displacement of this vertebra.

Doctor Waller, who treated the boy just after the accident, testified chiefly as to what the boy's father told him about the accident occurring in the boy's childhood and which is hereafter discussed.

He also testified that at first he thought the boy's back was only sprained, but on his failing to recover he had him sent to an orthopedic surgeon.

When asked:

"You are more familiar with the history of this case than any other physician that has seen Mr. Connell, and I will ask you to state to the court whether or not you think this boy is very seriously injured?"

And he answered:

"Well, Mr. Smith, to be honest, I can't tell you—I can't make a prognosis of this case now; however, I didn't think he was injured much at the time."

Doctor Sanderson testified:

"Q. Doctor, as a general statement as to this boy's condition, do you think there is very much the matter with him?
"A. I consider there is considerable.

*   *   *   *

"Q. Doctor, speaking about the effect of this injury, I will ask you to please state if it has been your experience that it is reasonable to expect a person in this shape to do serious heavy manual labor?
"A. No, it is expected under circumstances of this kind of an injury that you would not be able to do heavy manual labor.

*   *   *   *

"Q. Doctor, I wish you would explain this from your report. You say, 'I feel sure that he is exaggerating the effect considerably.' What do you mean by that?
"A. Well, I believe it is almost impossible in a case like this to analyze or quite understand for himself the effect of the injury.
"Q. Do you not think the fact that he has a claim pending in court, the outcome of which depends upon him being injured, that it would have some effect upon making him believe he was injured?
"A. I think it does."

The testimony of Doctor Ragan is not materially different from that of Doctor Sanderson, though he does not seem to have observed or did not remember the displacement of the vertebra, of which both Sanderson and Barrow testify; and while admitting that the boy has some disability thinks it not very great.

However, neither he nor Doctor Sanderson expressed the opinion that the boy is malingering; nor do they indicate how much disability they think there really is.

The boy and his father testified that between the two trials the boy tried to work. He helped his father saw two or three sticks of wood and later plowed four or five rounds, the length of which is not stated. Jarrel says the sawing made him feel sore and he could hardly get up the next morning.

As to the plowing, he says:

"Q. What effect did that have on you?
"A. Well, I like not to have got back to the house. I was plowing along and my plow hung under a root and it jerked me and I like not got back home. It hurt my back awful bad and then I was back on my crutches again after that."

His father says:

"Q. What did he do after that? (Meaning after the sawing).
"A. Well, he didn't do anything for several days; he has been helping around the house with his walking cane and walked around with his walking cane without his crutches for some three or four days and after that he went back to his crutches and then several days later he come to the field where I was plowing and asked me to let him plow a round or two, and I did, and, of course, this other is hearsay as the man over there says, as to what he said or the way it affected him; but me and my wife went off to a different part of the field looking over the place and when I come back he wasn't working and he said that the plow hit a root and hurt him again.
"Q. Has he been on his crutches since then?
"A. Yes, been in the house most of the time since."

The proof does not show when the plowing was done.

Summing up the evidence, we find it not disputed that there is a slight forward displacement of the fifth lumbar vertebra; that the left transverse process of this vertebra was fractured; that the lumbar region of the spine is rigid; and that there is slight inco-ordination of the lower limbs, suggesting cord disturbance.

Some disability is admitted by all the doctors who testify concerning it, and while two of them think the boy exaggerated the injury they express no opinion as to the real amount of injury or disability, nor do they say they think he can get along without crutches.

The efforts of the boy to do work were followed up with disastrous consequences and the father says he cannot dispense with crutches.

On the testimony as a whole, we think total disability is shown.

There is some suggestion that the boy's condition may be due wholly or partially to an injury received when he was a child two or three years old, at which time a wagon rolled over him.

It seems clear to us, though that whether that caused the displacement of the vertebra or not, it certainly could not by itself have caused the injury which now disables him.

His working at hard, manual labor for eighteen months while only fifteen or sixteen years old proves conclusively to our mind that the old injury could not, unassisted by the new, be the cause of his present condition. If it contributed, together with the new injury, to produce the disability, that would not bar recovery.

Fox vs. U. C. & O. P. Co., 147 La. 865, 86 South. 311.

Behan vs. Honor, 143, La. 348, 78 South. 589.

Plaintiffs counsel cite:

Moore vs. Peet, 162 Pac. 295; 99 Kansas 443, as holding:

"The phrase, 'total incapacity for work,' as used in the Workmen's Compensation Act, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual task of a workman in such a way as to enable him to procure and retain employment is ordinarily rated as totally incapacitated."

He also cites in support of this proposition:

Jarrell vs. Battalle, 93 Kansas 390.

London G. & Acci. Co. vs. Industrial Comm., 199 Pac. 962 (Colorado).

Meyers vs. Wadsworth, (Michigan), 183 N. W. 913.

We have not verified this citation by a reference to the cited cases, but the citation seems to us to express the law correctly.

## IS THE DISABILITY ONLY TEMPORARY?

We must decline to enter into this inquiry. To do so would be to assume the functions of prophets for which we are neither authorized by law nor qualified by nature. If in any case of still continuing total disability we could, from the testimony of medical experts in the record, form any opinion of our own as to how long disability would last, we could not do so in this case which is totally lacking in such evidence.

For these reasons it is decreed that the judgment of the lower court be amended by decreeing the plaintiffs, for the use of their son, Jarrel G. Connell, entitled to compensation at the rate of $18.00 per week during his disability, not to exceed 400 weeks; the first payment decreed due August 28, 1924, together with five per cent per annum interest on each payment from the time of the maturity thereof.

The judgment herein rendered is decreed subject to the contract between plaintiffs and their attorney, Huey P. Long, whereby they agree to pay him for his services one-third of what may be recovered in the suit.

And as thus amended the judgment appealed from is affirmed.

## ON APPLICATION FOR REHEARING.

REYNOLDS, J. Defendant asks for a rehearing on the ground that the judgment should have been for compensation

for an injury producing temporary total disability as provided for in sub-section (a) of section 8 of the Workmen's Compensation Act and not for an injury producing permanent total disability under sub-section (b) of section 8 of that act.

As stated in our former opinion, it is impossible for us to tell under the evidence for what length of time the disability will continue.

As to when the disability will cease is a question beyond our ability to determine, and under the evidence and the provisions of the Workmen's Compensation Act the plaintiff is entitled to compensation during disability, not exceeding 400 weeks.

Rehearing refused.