No. 2994

Second Circuit

---

## LE SEUR v. RUMBAUGH ET AL

---

(June 28, 1927. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant —Par. 159.**

In a suit under the Workmen's Compensation Law (Act 20 of 1914 and amendments) for compensation for disability to do work of any reasonable character the court will not fix the time when payment of compensation shall cease except where the injury causing the disability is minor and the evidence clearly shows that it will terminate shortly.

2. **Louisiana Digest—Master and Servant —Par. 154.**

Except as to matters of procedure, Act No. 85 of 1926 is not retroactive; and in a suit under the Workmen's Compensation Law commenced after the amendment of 1926 to recover compensation for an injury received prior thereto, the prohibition in the amendment against attorney's fees in excess of twenty per cent of the award or of $1000.00 in any event, has no application, even though the contract of employment between the plaintiff and his attorney was entered into after Act No. 85 of 1926 was passed.

3. **Louisiana Digest—Master and Servant —Par. 160e, 160k.**

Under Act No. 85 of 1926, the fees allowed witnesses as experts must be fixed in the judgment.

4. **Louisiana Digest—Master and Servant —Par. 160d, 160k.**

Under Act No. 216 of 1924, an alleged employee is entitled to recover not exceeding $250.00 for medical and surgical attention and hospital fees; and any amount in excess of such sum paid by the employer for such purposes cannot be deducted from employee's compensation except under agreement between them approved by the court.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. Robert Roberts, Judge.

Action by Gordon LeSeur against C. E. Rumbaugh, et als.

There was judgment for plaintiff and defendants appealed.

Judgment affirmed.

Long & McSween, of Shreveport, attorneys for plaintiff, appellee.

Cook & Cook, of Shreveport, attorneys for defendants, appellants.

## STATEMENT OF THE CASE

REYNOLDS, J.    Plaintiff sued C. E. Rumbaugh and the Hartford Accident & Indemnity Company for $20.00 a week for four hundred weeks beginning June 2, 1926, with legal interest on each payment from its maturity until paid, and for $250.00 for medical services, as for permanent total disability to do work of any reasonable character.

He alleges that he was employed by defendant, C. E. Rumbaugh, at a daily wage of $12.00 as rig builder and that in an accident growing out of and in the course of his employment on May 26, 1926, his chest was mashed and bruised, his collar bone broken, and the bones in his back between the shoulder blades broken and internal hemorrhages in and around the lungs and other vital organs caused, and he thereby permanently disabled to do work of any reasonable character.

He also alleges that he has expended or will have to expend $250.00 for medical services.

He further alleges that the Hartford Accident & Indemnity Company has insured defendant Rumbaugh against loss by reason of his injuries and agreed to pay plaintiff such sums as he may be entitled to under the Workmen's Compensation Law.

The defense is that plaintiff had fully recovered from the effects of his injuries and was again able to do work of any reasonable character and that he had been paid compensation during the time of his disability.

It is further alleged that defendant, C. E. Rumbaugh, had expended $604.75 for medical attention rendered to plaintiff, and he asked that the excess of $354.75 over the $250.00 that he was legally liable for be deducted from any additional compensation that might be awarded him by the court.

On the issues the case was tried and there was judgment in favor of the plaintiff and against the defendants in solido for $20.00 a week during his disability, not exceeding three hundred weeks, the first payment being decreed June 2, 1926, with legal interest on each payment from its maturity until paid.

It was further decreed that the fees of plaintiff's attorney under the contract between them be fixed at one-third of the compensation awarded plaintiff.

And it was further decreed that the fee of Dr. M. L. Adair, a witness sworn as a medical expert, be fixed at $25.00.

From this judgment both defendants have appealed.

## OPINION

Defendants set up four grounds of alleged error in the judgment appealed from, namely:

1.  That the lower court erred in not restricting the award of compensation

to one year from June 16, 1926; the record showing conclusively that by that time plaintiff will have fully recovered from his injuries and be able to engage in the same occupations as before the injury.

2. That the lower court erred in recognizing and enforcing the contract between plaintiff and his attorney awarding the latter as fees one-third of the compensation allowed plaintiff; the amount of fee contracted for being prohibited by law.

3. The lower court erred in fixing the fee of the witness, M. L. Adair, at $25.00, there having been no rule taken on defendants to fix the fee other than the fee allowed by law, and there being no basis in the record for the allowance of the fee fixed.

4. The lower court erred in not allowing defendants as a credit on the compensation awarded plaintiff the difference of $354.75 paid by defendant, C. E. Rumbaugh, for medical attention to plaintiff in excess of the $250.00 amount of medical attention he was legally obligated to furnish plaintiff.

Considering the alleged errors in the order assigned:

## I.

Plaintiff testified (page 16):

"Q. Now, do you suffer any pain at this time?

"A. I have it all the time.

\* \* \* \*

"Q. Since the accident. Where do you suffer that pain?

"A. Well, this here collar bone and clavicle bone. It draws my shoulder and head a little bit. It is short and it gives me some trouble; that is, in the use of my arm, you know. And I have a pain right here.

\* \* \* \*

"Q. Going around to your back, extending all the way through?

"A. All the way through. It is a little to one side of where that clavicle is lapped there.

"Q. Did you suffer any pain before receiving this accident?

"A. No, sir.·

"Q. How about your strength; are you as strong now as before this occurred?

"A. No, sir.

"Q. Have you done any work since this accident at all?

"A. Nothing; only just around the house, or something like that."

Doctor M. L. Adair testified (pages 2-11):

"Q. Doctor, does your examination of the spinal column show part of the bone missing?

"A. It appears that the spinous processes are missing as they do not show as in the other vertebrae.

"Q. What are the spinal processes?

"A. That is the spike that proceeds backward in the vertebrae.

"Q. That is the bone itself?

"A. That is the backbone that you feel when you put your hand on the patient. You feel in the back and feel little spines.

"Q. How many of those are missing, from the x-ray standpoint?

"A. There are three that we do not see in the plate.

"Q. Is that condition permanent, doctor?

"A. Yes, sir.

"Q. Any chance to grow any more processes from the backbone in that place?

"A. There is not.

\* \* \* \*

"Q. Now this—what do you call the collar bone?

"A. The clavicle.

"Q. How low down is that break?

"A. About the junction of the middle and inner third, a little further out than that.

"Q. That is not in position, is it?

"A. No, sir; that overlaps.

"Q. How could you get that back where it would not overlap; could that be done?

"A. Well that could be done by open reduction; surgical operation.

\* \* \* \*

"Q. He is not totally disabled at the present time for any kind of work, is he?

"A. No; I do not think so.

"Q. In his present condition, you think that he could do ordinary labor?

"A. I should think that he could do any kind of light work; indoor work; office work or labor that does not require too much use of his back for a while.

"Q. How long do you think that he would have to refrain from doing heavy labor because of his back?

"A. Oh, I should think that in a year from the time of his operation he should be all right.

"Q. That would be about May or June of this year, then? He was operated on shortly after the injury, was he not?

"A. I do not know exactly.

"Q. Was not that what he gave you as his history?

"A. He told me he was injured May 26th.

"Q. You think then that at the end of that time, insofar as his bone injuries are concerned, he should be able to do the same kind of work that he has·been doing heretofore?

"A. Well, it is hard to put an exact date on just when. I should think that in time he should be able to do any work that did not require too much bending or straining of that portion of his spine. Then, of course, there would probably be a little—some discomfort or disability from the overriding of the fragments of the clavicle there. That, however, as compared with the injury to the back is a minor point."

Doctor H. A. Durham testified (pages 25-34):

"Q. Now, Doctor Durham, did you have occasion to treat Gordon LeSeur, the plaintiff in this case, just after the accident which occurred to him on or about May 26th, 1926?

"A. Yes; I saw him on May 28th; referred to me by Dr. Hendrix.

\* \* \* \*

."Q. Just what did you find to be his condition?

"A. I found him to have a fracture of the right clavicle—collar bone. An impaction fracture with slight displacement of the—beg pardon, may I refer to my notes?

"Q. All right.

(Witness referred to his notes.)

"A.· (Witness continuing)—fourth dorsal vertebrae.

"Q. Now what ,treatment did you administer to him during the time that you had him under your observation and care?

"A. At the time the man was suffering severe pain and he was kept absolutely quiet for about three weeks previous to any operation; the reason for complete rest being that if he were moved about he might be injured by some further slipping of his vertebrae, causing paralysis.

\* \* \* \*

"Q. How long should it be before complete repair had taken place?

"A. Well, I think perhaps that would vary some with individuals. Probably from a year to a year and a half, the condition should be in a permanent state.

"Q. And he would not be in any way incapacitated in your opinion after that?

"A. Not insofar as physical activity was concerned. He would have a stiffening over a limited area of three vertebrae which are in the dorsal area of the spine where there is very little activity anyway.

."Q. If you assume that the nature of his work is physical—lifting and moving objects, say heavy objects—would it in any way hamper him after there is complete repair?

"A. I do not believe it would.

"Q. Would it affect his earning capacity in such occupation?

"A. No, sir.

\* \* \* \*

"Q. That makes his backbone for as much as three and a half or four inches stiff?

"A. Stiff.

"Q. That will stay stiff for the rest of his life?

"A. Yes."

Doctor A. A. Herold testified (page 50):

"Q. Doctor Herold, did you in your report express any opinion? What was your report in regard to the plaintiff's disability?

"A. According to my report I considered his real disability due to inability to perfectly use that right arm rather than to any chest condition. He has diminished reflex in his right arm showing that there has been a little pressure on some of the spinal nerves there.

"Q. Will that continue during his life time or pass away?

"A. Well, that would be more for the orthopedic man to pass upon, the bone expert, Dr. Durham. It may entirely clear up in time. Dr. Durham expressed an opinion about it. I don't know."

All of the evidence convinces us that at the time of the trial plaintiff was still disabled to do any work of a reasonable character and that the doctors could not fix any definite time when the disability would cease.

In Mays vs. Allison & Langston Supply Co., 5 La. App. 686, and Upshaw vs. Triangle Drilling Co., 5 La. App. 224, was fixed a definite period when the compensation awarded the plaintiffs in those cases should terminate; but in those cases the injury suffered was well defined and not internal and all of the doctors who testified were agreed that in a very short time the plaintiffs would be entirely recovered from their disabilities; but in the case at bar the injuries are internal and Dr. Herold who, under an order of court, examined the plaintiff, could not say definitely when plaintiff would not be to some extent disabled to do work of a reasonable character. Neither could Dr. Adair nor Dr. Durham.

Our conclusion from the evidence is that the District Court did not err in refusing to fix a shorter time than that named in the statute during which plaintiff should be paid compensation and that the judgment of the lower court on that point is correct.

II.

Act No. 85 of 1926 provides that:

"In no case shall the fees of an attorney who renders services for an employee coming under the provisions of this act exceed twenty per centum of the amount of the award, provided that the maximum fee shall in no case exceed $1000.00."

This provision clearly has reference to causes of action arising subsequent to the passage of the act, and as plaintiff's cause of action arose before then the agreement between him and his attorneys whereby they are to receive for their services one-third of the compensation awarded him is not prohibited by the act.

III.

Subsection 4 of Section 18 of Act 85 of 1926 provides that:

"The fees of medical witnesses shall be reasonable and are not to be allowed unless fixed in the judgment."

This provision relates to court procedure and applies to actions tried after its pas-

sage, although the cause of action arose prior thereto.

The judgment appealed from fixed the fee of Dr. M. L. Adair at $25.00, and we are not prepared to see that the amount is excessive.

### IV.

Defendant was allowed credit for medical expenses paid by him up to $250.00 and was refused credit for an additional $354.75 paid by him for the same purpose.

In Thompson vs. Louisiana Central Lumber Co., 2 La. App. 200, we held:

"That excess payments for hospital and medical services could not be deducted by the employer from the compensation due the employee without the latter's consent."

Citing Delaney vs. Ferd. Brenner Lumber Co., 154 La. 156, 97 South. 349; Quave vs. Lott-Batson Lumber Co., 151 La. 1052, 92 South. 678.

Defendant insists that in any event his demand for credit for excess payments for hospital and medical services to plaintiff should have been dismissed as in case of non-suit only. Defendant's claim is one under a quasi contract and not involved in this suit and therefore the judgment appealed from is no bar to the prosecution of his claim in a proper action.

Finding no error in the judgment appealed from, it is ordered, adjudged and decreed that it be affirmed, with costs.