No. 3701

Second Circuit

PATRICK v. GRAYSON & YEARY ET AL.

(March 24, 1930. Opinion and Decree.)
(April 10, 1930. Rehearing Refused.)
(May 5, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

Harry V. Booth, of Shreveport, attorney for plaintiff, appellee.

John B. Files, of Shreveport, attorney for defendants, appellants.

DREW, J. Plaintiff brings this suit for compensation under the Employers' Liability Act (Act No. 20 of 1914, as amended), alleging that he was employed by the defendant, a commercial partnership, as saw filer, and that his duties required him to do anything necessary to be done around the mill, and that on the day he was injured he was attempting to crank a gas engine which operated and controlled a water pump by which water was furnished to operate the saw mill and planer. That while in the act of cranking said pump he felt a sharp pain in the small of the back near the left hip bone, which pain at the time nearly prostrated him; that he fell to the ground and was unable for some time to arise for the reason that he could not pull his feet together on account of the severity of the pain; that the injury caused severe damage to the muscles, tendons and ligaments in the lower portion of the back near the left hip bone, in or near what is known and referred to as the sacro-iliac joint; and that it caused a sprain of the sacro-iliac joint, totally disabling him from doing work of any reasonable character. He further alleges that he reported the injury to the defendant and that defendant did not offer him any medical attention. He prays for judgment in the sum of $20 per week for a period of 400 weeks and for the further sum of $250 for medical service and fees.

Defendants admit the allegation of commercial co-partnership and that the partnership is domiciled in Caddo parish, Louisiana, and, further answer by pleading a general denial of each allegation of the plaintiff's petition.

There was judgment in the lower court for the sum of $15 per week for a period of not exceeding 300 weeks, the first payment to be due as of May 17, 1929, together with 5 per cent. interest on each payment from its maturity until paid, subject to a credit of nine weeks theretofore paid, and rejecting, as of non-suit, plaintiff's demand for medical fees.

From this judgment the defendant appealed, and plaintiff has answered the appeal, asking this court to amend the judgment of the lower court by allowing $75 as fees of expert witnesses and allowing $250 as medical fees.

Plaintiff began work for defendant about the first of February, 1929, and, on the 5th of March thereafter, while attempting to crank an engine used to operate a pump which furnished water for the saw mill and planer it was necessary for him to extend himself in a rather awkward position, and while in the act of trying to spin the crank of the engine, the crank being somewhat similar to the crank of an old model Ford, he felt a severe pain in his back. He was forced to sit down and remain there about ten minutes before he could get up, due to the fact that he could not get his feet together. As soon as he was able to do so he returned to the mill, a distance of approximately a half mile, and reported to Mr. Yeary, one of the partners, and who was in charge of the mill, that he had hurt his back trying to start the engine, and that he was not going to try it any more, and that he would have to send someone else to start the pump. There were no witnesses to the accident, due to the fact that the pump is located out in the woods on a branch. However, we think the testimony of plaintiff and of the defendant, Yeary, is sufficient to establish the fact that the acci-

dent occurred as alleged by plaintiff, and that the same was reported to the defendant at the time.

Defendant did not suggest that plaintiff see a physician or offer the service of one, and in fact the testimony shows that plaintiff did not visit a physician until a week or more after the accident when he went, of his own accord, to Dr. Gandelman, who diagnosed his trouble as a sprain of the sacro-iliac joint and gave him a purgative, suggesting that he have an X-ray made, and on the following morning when plaintiff called on him again, he strapped plaintiff's back with adhesive tape.

Plaintiff states that his back continued to hurt him from the time of the accident, although he continued to work at the mill on the day of the accident and thereafter until May 10, 1929, at which time he quit. He states that he worked under difficulty, and did not do any more than he had to, that other men in the mill assisted him in his work, and that he really was not able to carry on his work. This testimony is corroborated and contradicted. However, there is no reason given for his quitting, except that he was no longer able to do the work and that he had allowed the mill to run down by not being able to properly do his work. During this time, he had complained on a number of occasions, to the other workmen, and to the defendant Yeary.

Some time after the accident, another mill in Texas offered plaintiff a job with a salary of $125 a month, which was a raise of $25 a month over what he was then receiving, and the raise was met by the defendants on April 1, 1929, after the accident.

Between the time plaintiff was injured and the time he quit, he only lost four or five days at one time, while attending physicians for examination and treatment in the Charity Hospital.

We think the evidence is clear that plaintiff received an injury to his back, as alleged by him, and that he suffered from that injury during the time he continued to work for defendant, and there is no dispute that at the time of the trial plaintiff was disabled insofar as doing any reasonable work of the character he was accustomed to do.

The evidence is also convincing that plaintiff was suffering from arthritis of longer duration than the time of the injury. Plaintiff was not disabled before the accident, and had never before complained of his back. This was shown by witnesses who worked with him and who had known him for many years. He did suffer continuously after the accident, and within two months' time became totally disabled, and this condition continued up to the time of the trial.

In the case of Hammons vs. Southern Carbon Co., 5 La. App. 189, the court said:

"The physicians for defendant, as we gather, attributed the condition of plaintiff solely to arthritis, and although they did not so state we infer that the disease had at the time of the accident reached such a stage that disability would have soon resulted without regard to the accident; but it does not follow that the accident was not a contributing cause to his disability, which, as we have stated, was inferentially shown by the fact that plaintiff was not disabled before the accident and has been continuously disabled since."

"The fact that an employee, injured in performing services arising out of and incidental to his employment in the course of his employer's occupation, was already afflicted with a dormant disease that might some day have produced physical disabil-

ity is no reason why the employee should not be allowed compensation, under the employers' liability statute, for the injury which, added to the disease, superinduced physical disability." Behan vs. John B. Honor Co., Ltd., 143 La. 348, 78 So. 589, L.R.A. 1918F, 862; Craft vs. Gulf Lumber Co., 151 La. 281, 91 So. 736, 737.

In Hicks vs. Meridian Lumber Co., 152 La. 975, 94 So. 903, 904, the court said:

"It is quite immaterial for the purposes of this case whether the alleged strain brought on the aneurism, or merely hastened the inevitable rupture; for this court would allow compensation in either case."

In Craft vs. Gulf Lumber Co., supra, the court said:

"We are strongly persuaded from the evidence that at the time the plaintiff received the blow in the lower part of the abdomen he had a hernia in process of development, which was quickened and greatly accelerated by the blow he received," but nevertheless allowed compensation.

Defendant contends that one who suffers an injury at a time he is suffering from a disease or disability must show to what extent the injury received by him, in the course of his employment, and growing out of it, increased the disability, and cites in support of the contention the case of Bauman vs. Newman, 5 La. App. 119, wherein the Orleans Court of Appeal held that the plaintiff was suffering from a disease or disability at the time of the injury received, and was only entitled to recover damages for so much of his affliction as was the result of the accident. The court erroneously based its decision on that in the case of O'Neil vs. Morgan's L. & T. R. R. & S. S. Co., 5 La. App. 94, which was an action arising ex delicto under article 2315 of the Civil Code, in which the court was careful to distinguish it from an action arising under the Workmen's Compensation Act. In the case of Caldwell vs. City of Shreveport, 150 La. 465, 90 So. 763, the court said:

"In the absence of a statute fixing the amount of compensation recoverable for an injury resulting partly from the negligence of another and partly from a disease lurking in plaintiff's system, plaintiff is entitled to damages for only so much of his affliction as is the result of the accident."

The court distinguished this case from the cases of Behan vs. John B. Honor Co., supra, and Fox v. United Chemical & Organic Products Co., 147 La. 865, 86 So. 311, and said: "In the present case, the amount of compensation, or extent of liability, is not fixed * * * by statute."

The decisions of the courts of this state, with the exception of the case of Bauman vs. Newman, supra, have been uniform in holding that the compensation paid injured workmen under the Workmen's Compensation Act is based upon disability, and that it is immaterial whether the injury alone, or in conjunction with a latent systemic infection caused the disability. Connell vs. Gilliland Oil Co., 2 La. App. 438; McMullen vs. La. Cent. Lumber Co., 2 La. App. 773; Becton vs. Deas Paving Co., 3 La. App. 683; Hammons vs. Southern Carbon Co., supra; Blackman vs. Hope Engineering, etc., Co., 11 La. App. 92, 120 So. 682; Henderson vs. Louisiana Power Co., 9 La. App. 475, 121 So. 217; Arender vs. Grant Timber, etc., Co., 9 La. App. 132, 119 So. 498; Taylor vs. Southern, etc., Co., 125 So. 877, decided January 31, 1930.

We see no good reason for adopting the rule in the case of Bauman vs. Newman which, we think, is erroneous, and will adhere to the well-settled jurisprudence of this state on this point.

Defendant contends that the injury received by plaintiff was not due to any accident such as is contemplated by Act No. 20 of 1914; that there was no specific strain sufficient to cause injury or accident as provided by the Compensation Act.

In McMullen vs. Louisiana Cent. Lumber Co., supra, the court said:

"The term 'accident,' as employed in the compensation acts, is broad enough to include an injury from muscular strain or physical overexertion, such as hernia or rupture or bursting of blood vessels. This is true although the physical condition of the employee is such as to predispose him to the injury. But it has been held there must be a definite, particular occurrence to which the injury can be attributed. * * *
"Acceleration of a diseased bodily condition may constitute a personal injury, and an injury may be by accident, although it would not have been sustained by a perfectly healthy individual."

In Gospel vs. Southern Carbon Co., 4 La. App. 272, the court said:

"The statute is intended to provide protection to the employees against all risks to which they may be exposed by the employment (Dyer v. Rapides Lumber Co., 154 La. 1091, 98 So. 677), and where it appears there is a causal connection between the risk of the employment and the accident, it is the rule to allow compensation, although the risk of the employment may have been only a contributing cause."

"The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment." Flowers vs. Williams-Rieves Lumber Co., 5 La. App. 49; Dyer vs. Rapides Lumber Co., supra; Myers vs. La. Ry. & Nav. Co., 140 La. 937, 74 So. 256; Ferguson vs. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248; Conaway & Clark vs. Marine Oil Co., 162 La. 147, 110 So. 181.

We think these decisions are decisive of this issue, and that plaintiff was injured by accident, as contemplated in the compensation act.

Plaintiff has answered the appeal and asks that we assess as costs $75 for fees of expert witnesses. There is nothing in the record to show that this matter was passed on by the lower court, or that the same was asked for there. We do not think this matter can be presented to this court by answer to appeal without having been first presented to the court of original jurisdiction. Le Seur vs. Rumbaugh, 6 La. App. 587.

He also prays that the judgment of the lower court be amended by allowing him medical fees in the sum of $250. There is very little evidence in regard to medical fees in the record, and the lower court rejected the demand of plaintiff as of nonsuit as to this item. We see no good reason for disturbing the judgment of the lower court.

It is therefore ordered, adjudged, and decreed, that the judgment of the lower court be affirmed, cost of appeal to be paid by defendant-appellant.