## ROUSSEL v. COLONIAL SUGARS CO. *
### No. 14205.

Court of Appeal of Louisiana. Orleans.
April 10, 1933.

Henry L. Himel, of Convent, and Walter Lemann, of Donaldsonville, for appellant.

Martin, Woods & Woods, of Lutcher, for appellee.

HIGGINS, Judge.

The plaintiff alleges that while employed by the defendant in the capacity of a carpenter and millwright he was injured on June 11, 1930, resulting in permanent total disability, and that under the provisions of the Employer's Liability Statute of the state (Act No. 20 of 1914, § 8, as amended) he is entitled to recover compensation for a period not exceeding 400 weeks, subject to certain credits for compensation received.

Defendant admits the hazardous employment and that plaintiff was injured and avers that he was paid compensation at the rate of $19.33 per week, representing 65 per cent. of his wages, until November 18, 1930, when he was pronounced completely cured by the attending physician and ordered to return to work, and denies that the plaintiff was in any way disabled from the accident thereafter.

There was judgment in favor of the plaintiff as prayed for and defendant has appealed.

The record shows that plaintiff was employed as a carpenter and millwright by the defendant company which is engaged in the business of refining sugar. On June 11, 1930, while performing his duties he came in contact with an exposed charged electric wire which caused him to fall about eighteen feet resulting in his being rendered unconscious and sustaining a fracture in the region of the left wing of the sacrum and an injury to the lumbar spine. He was taken home where he was attended by a local physician and the next day brought to a hospital in New Orleans where he was treated by Dr. Geismar and remained until July 24, 1930, and thereafter was treated at the doctor's office at various intervals until November 18, 1930, when he was pronounced cured and ordered to return to work. The plaintiff, in accordance with the doctor's instructions, was given light work to perform and worked until May 2, 1931. When he resumed work a general reduction of 10 per cent. of the wages and salaries of all employees of the company was put into effect and later, according to its usual custom, the plant was closed and most all its employees, including plaintiff, were laid off for over a month. On May 25, 1931, plaintiff filed the present suit which was tried on September 2, 1931.

The sole issue presented is whether or not the present disability of the plaintiff resulted from the accident. The determination of this question depends almost entirely upon medical testimony.

Dr. Leon J. Manville, a witness for plaintiff, a specialist in radiology, testified that an X-ray picture taken on April 30, 1931, showed "evidence of a rather old fracture in the region of the left wing of the sacrum, with very slight callous at this time. Hypertrophic arthritis of the lumbar spine is noted."

Dr. Roy B. Harrison, physician and surgeon, also a witness for plaintiff, stated that he treated plaintiff about twenty times from April 30, 1931, to September 1, 1931; that from examining the plaintiff and the X-ray picture he diagnosed the case as "a fracture of the left wing of the sacrum that is unhealed, and he has some arthritis of his lumbar vertebra"; that the unhealed fracture of the sacrum is not permanent but that the arthritis is; that he was of the opinion that the arthritis was the result of the traumatic injury because he had eliminated by examinations and tests every other possible focus of infection; and that the injury prevented plaintiff from doing any kind of work that

*Rehearing denied May 8, 1933.

required any amount of walking or stooping, such as carpenter work.

Dr. S. Geismar, a surgeon, defendant's witness, who treated the plaintiff from June 12, 1930, to November 7, 1930, when he discharged him and ordered him to return to work on November 18th, testified that there was a "fracture of the left ischium and acetabulum," explaining that the ischium is a part of the pelvic bone and acetabulum is the cup in which the head of the femur, which is the thigh bone, rotates; that the plaintiff was completely cured on November 7, 1930, when he was discharged; that he was fortified in his opinion because he saw the plaintiff on Canal street, where he visited a store and did some shopping, walking very rapidly and in a normal manner; that immediately thereafter when the plaintiff came to his office and was called from the waiting room to his private office, he walked extremely slow and when the witness told the plaintiff that he had seen him walking fast and normally on the street plaintiff replied that when he sat down his back got stiff.

Dr. Edward S. Hatch, a specialist on injuries and diseases of the bones and joints, also a witness for defendant, testified that he examined the plaintiff once on June 29, 1931, and was of the opinion that the fracture had completely healed, but he stated that the "skiagraph shows hypertrophic arthritis of the lumbar spine and bony callous at the inner lower border of the left acetabulum and also along the lower margin of the right sacro-iliac joint. These bony changes apparently represent old repaired bone injuries." He also said "I am sure that patient has remarkably good result in a man of his age from injuries which he received." Dr. Hatch referred to the X-ray report of Dr. Henderson on which he largely predicated his diagnosis. This X-ray report reads in full as follows:

"There is evidence of a very well-defined hypertrophic arthritis visible in the lumbar spine. In the bony pelvis there can be seen upon the left side an alteration in the acetabulum with considerable osseous proliferation protruding into the pelvis and down ascending ramus of the ischium. It is believed that a fracture has existed at this point. Some callous is thrown out and repair is now complete in this location. There is another structural change observed in the pelvis, but it is upon the opposite side, namely, along the lower margin of the sacro-iliac joint, where the osseous tissue has thickened itself considerably. It is believed that the structural changes described upon both sides are evidences of old traumatic lesion, that is, injury, but that repair has taken place, is complete and that the repair must be considered most excellent."

It will be noted that Drs. Manville, Harrison, and Hatch testified and Dr. Henderson's X-ray report showed that the plaintiff has a well-defined hypertrophic arthritis visible in the lumbar spine. Drs. Hatch and Geismar were of the opinion that that condition could have been brought on by any focus of infection, but admitted that it could have been caused by traumatic injury. They did not explore to find out if there was any other source of infection. However, Dr. Harrison testified that he eliminated by examinations and tests all other possible foci of infection getting negative results, therefore, he was of the opinion that the arthritis was caused by the trauma or injury which the plaintiff sustained.

Counsel for defendant argues that the arthritis had no connection with the injury because the plaintiff worked from November 18, 1930, to May 2, 1931, and that he brought the present suit only after he found out that he was to be laid off. The defendant's evidence shows that Dr. Geismar ordered the plaintiff to do light work, and that the plaintiff's superior insisted upon him doing work of that character and, even under these circumstances, the plaintiff complained of pains in his back and hip. The lay testimony is to the effect that the plaintiff worked regularly and was in a healthy and robust condition prior to the time of the accident, and thereafter, while he attempted to work, he constantly complained of pain and ill health.

Even if it be conceded that the fracture completely healed, we are of the opinion that the preponderance of the evidence shows that the arthritis was the result of the injury and, therefore, plaintiff is entitled to recover. Hammons v. Southern Carbon Co., 5 La. App. 187, 189; Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L. R. A. 1918F, 862; Craft v. Gulf Lumber Co., 151 La. 281, 91 So. 736; Patrick v. Grayson & Yeary, 13 La. App. 228, 127 So. 116; Connell v. Gilliland Oil Co., 2 La. App. 435, 438; McMullen v. La. Central Lumber Co., 2 La. App. 773; Becton v. Deas Paving Co., 3 La. App. 683; Henderson v. La. Power Co., 9 La. App. 475, 121 So. 217; Blackman v. Hope Engineering & Supply Co., 11 La. App. 92, 120 So. 682; Arender v. Grant Timber & Mfg. Co., 9 La. App. 132, 119 So. 498; Taylor v. Southern Engineering Const. Co., 13 La. App. 292, 125 So. 877.

If plaintiff recovers at any time before the expiration of the 400 weeks fixed by law, the defendant has a right to institute proper proceedings to have the court stop the payment of compensation.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.