121 So.2d 515 (1960)
Louis R. BLANCHARD, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
No. 5068.
Court of Appeal of Louisiana, First Circuit.
May 31, 1960.
Rehearing Denied June 29, 1960.
Jos. E. Bass, Jr., Lake Charles, for appellant.
Cavanaugh, Hickman, Brame & Holt, Lake Charles, for appellee.
Before TATE, PUGH, and PUTNAM, JJ.
PUTNAM, Judge.
This is a workmen's compensation suit instituted by Louis R. Blanchard against the Travelers Insurance Company, in which plaintiff alleges that he is totally and permanently disabled as a result of an injury sustained by him on January 2, 1958, while working as a roughneck on a drilling rig operated by John W. Mecom, whose compensation carrier is made defendant herein. The case was tried in the District Court September 11, 1959, and judgment rendered, rejecting plaintiff's demands and dismissing his suit, on January 15, 1960, from which judgment plaintiff prosecutes this appeal. It is conceded that the rate of compensation to be paid plaintiff is the maximum of $35 per week.
The record shows that plaintiff was injured when an airhose connection to a water pump broke, causing a metal-tipped part of the hose to rotate rapidly, striking plaintiff several times about the head, shoulders, and back. He was knocked unconscious by the blows received by him for several minutes and was removed to St. *516 Patrick's Hospital in Lake Charles, where he was confined for treatment for eight days. Initially, plaintiff was treated by Dr. V. Hugh Price, a general surgeon of Lake Charles, from the date of the accident until the latter part of March, 1958, at which time Dr. Price referred him to Dr. M. E. Faulk of Beaumont, Texas, a neurosurgeon, who saw plaintiff on several occasions and treated him in conjunction with Dr. Price, who also consulted with plaintiff and treated him until February 17, 1959, when these two doctors discharged him as being fully recovered and able to return to his former occupation as roughneck. Compensation benefits were paid at the rate of $35 per week from the date of plaintiff's injury until February 20, 1959, a period of 59 weeks.
The trial judge, after reviewing the medical evidence, concluded that plaintiff had failed to carry the burden of establishing by a preponderance of the evidence that there is a causal connection between the disability of which he now complains and the accident which occurred on January 2, 1958.
Dr. Price and Dr. Faulk agree that plaintiff suffered a concussion of the brain which rendered him unconscious and resulted in what is called a post-concussive syndrome, which manifested itself by attacks of dizziness and headaches, which were particularly marked whenever plaintiff attempted to climb, do strenuous work, or when he was subjected to unusual noises, and even in some instances by the noises made by children at play in his home. These two doctors also found that plaintiff suffered from high blood pressure, which is a condition he had not experienced before the accident, but which they testified responded readily to medication and was not a result of the traumatic injury received in the accident in question.
It is established that plaintiff had for several years pursued the occupation of roughneck on an oil rig; that he ordinarily worked as a derrickman, but that on the job he held at the time of his injury he was working on the floor of the derrick. He had been examined prior to obtaining this employment some time before his injury, and at that time had not shown any hypertension or high blood pressure and had been approved for the work. It is also established that this man had always performed these strenuous duties in a satisfactory manner and without any physical difficulty.
Prior to his discharge by Dr. Price and Dr. Faulk, plaintiff was examined by Dr. Kirgis, a neurosurgeon of New Orleans, on August 28, 1958, and again on March 5, 1959, after his discharge. Dr. Kirgis concurred in the diagnosis of post-concussive syndrome and was of the opinion that the condition had persisted in this plaintiff longer than was usual, and was disabling. At one time he entertained the thought that plaintiff may have sustained a subdural hematoma, but ruled out that possibility as a result of his later examination. It was further his opinion that plaintiff's condition should be rendered completely asymptomatic in from 18 to 24 months after the date of the accident.
Dr. Posey, a neuropsychiatrist and neurologist also of New Orleans, likewise examined plaintiff on March 5, 1959, and diagnosed his condition as a post-traumatic encephalophathy, which is a dysfunction of the brain following the concussion, causing the headaches and dizziness of which plaintiff complained. While Dr. Kirgis did not state that the rise in plaintiff's blood pressure was due to this accident, it was his opinion that a more adequate explanation of this condition should be obtained by other examinations if possible; and Dr. Posey, on the other hand, was of the opinion that if the injury was to one of the lower brain centers, the post-concussive state or syndrome and high blood pressure could have occurred at the same time, although this is not normally the case in an injury of this type. It was Dr. Posey's further opinion that plaintiff's symptoms persisted on a physical basis rather than a *517 neurotic or a psychiatric basis, although it is extremely difficult to tell in cases of long duration when recovery might be had from a physical standpoint, yet the symptoms persist as a neurosis.
Plaintiff was also examined on August 8, 1959, by Dr. Sorum, a psychiatrist practicing in New Orleans, who testified that in his opinion the symptoms of headaches, dizziness, etc., whenever plaintiff attempts to do any strenuous work, is subjected to noise, or other upsetting factors, commenced as a bona fide post-concussive syndrome, as found by Drs. Faulk, Price, and Kirgis, but, that at the time of his examination the continuation of these symptoms was on a neurotic basis and that the trauma received in the accident on January 2, 1958, was the major precipitating factor in the chain of events leading up to this state, which he reluctantly called a traumatic neurosis. He felt that plaintiff would ultimately recover and be able to return to his job as a roughneck; however, it was his opinion that he was disabled at the time of his examination.
After plaintiff had been examined by Dr. Kirgis, the defendant caused him to be examined by Dr. Levy, a neurosurgeon practicing in New Orleans. Dr. Levy agreed with Dr. Price and Dr. Faulk, stating that he found him symptom-free, with no residual disability from the accident of January 2, 1958, and that he had recovered from the post-concussive syndrome which he experienced. When questioned as to whether his present condition and complaints of headaches and dizziness persisting to the time of his examination of July 11, 1959, were psychiatric, the doctor said he had no opinion as to whether these symptoms could relate to neurosis; that he would leave this to a psychiatrist and would not step "one inch beyond neurosurgery."
The testimony of lay witnesses at the trial corroborate plaintiff as to his reactions on the occasions since the accident when he has attempted to do work such as painting a house which necessitated climbing a ladder, fixing a gate, cutting grass, and a few other odd jobs which he was unable to perform satisfactorily, or to complete. It is also significant that on one occasion before he was discharged by Dr. Price and Dr. Faulk, he had attempted to work on an oil rig but could not do so at that time.
We think that it is especially significant in this case that none of the many doctors who examined Blanchard believe him to be feigning the symptoms which he describes. Dr. Faulk and Dr. Price found that he had fully recovered from the postconcussive syndrome and the other effects of this accident, and were of the opinion that he could and should return to work, even from a therapeutic standpoint. With specific regard to the headaches and dizziness complained of by plaintiff, when he was discharged, Dr. Faulk testified as follows:
"Q. Do you think that is connected with the injury? A. Not directly. It might be connected with the fact that he wan't working or some home situation; the fact that he was under some medication here; but certainly it did not derive from the fact that he was hit on the head."
He also stated that in his opinion a postconcussive syndrome is limited to three months' duration insofar as physiologic changes in the brain are concerned, from an organic standpoint, and that if the functional difficulties arising from a head injury of this type last for some time, he thinks the problem is one calling for a psychiatrist. In similar vein, Dr. Price, under cross-examination, testified that if plaintiff still complains of headaches and dizziness, it is probably due to a "nervous phenomenon," and that he was unable to find any cause for his high blood pressure except an "emotional nervous condition." He did not state that such condition was a result of the accident, but such a conclusion seems inescapable under the evidence.
In other words, as we appreciate the findings of these two experts who treated *518 plaintiff from the date of the accident for a period of over one year, they could not explain plaintiff's condition from a neurological or organic standpoint, primarily because of the long duration of the symptoms, but they did not consider him to be a malingerer. Since they felt he had recovered physically, they discharged him as able to return to work, excluding the possibility of neurosis as not being in their sphere of medicine. On the other hand, the findings of Dr. Kirgis, Dr. Posey, and Dr. Sorum are consistent with plaintiff's testimony and that of the lay witnesses at the time of trial, leading to the conclusion that plaintiff was still disabled from performing the strenuous duties of roughneck on an oil rig, involving bending, heavy lifting, climbing, and much physical activity, when this suit was brought.
In the early case of Wroten v. Woodley Petroleum Co., 2d Cir., 1929, 12 La.App. 348, 124 So. 542, 543, the Court said:
"(3) We realize that the mere fact that a workman has sustained an injury which produces immediate disability is found some time after the accident to be afflicted with a disease, which may have resulted from the accident, does not raise any presumption that the accident caused the disease; however, when, in addition to the circumstances stated, it is shown that the workman was in good health prior to the accident without any symptoms of the disease, and that he was immediately disabled by the accident in which he sustained wounds which could have caused the disease, and that the illness or pain immediately following the accident had been continuous, we think the presumption should be that the accident caused the disease, and that the workman is entitled to compensation for the resulting disability.
"The judgment is affirmed."
Again, in a case involving a head injury similar to that sustained by plaintiff in this case and where the question was one of causation of the disability found to exist, McPherson v. Hillyer-Deutsch-Edwards, Inc., La.App. 1st Cir., 1932, 143 So. 89, 92, the rule was stated thusly:
"(5) The plaintiff's case comes within the rule that`Where injury results in disability which is established and the disability is continuous, the law does not distinguish between that caused by the injury established and that which may be more particularly attributed to disease, but will allow recovery for the disability shown to exist as the immediate cause of the injury.'
"The courts have so held in many cases, using different language as may be adapted to the situation found to exist. The following cases support in principle the present situation: Connell v. U. S. Sheet & Window Glass Co., 2 La.App. 93; Henderson v. Louisiana Power Co., 9 La.App. 475, 121 So. 217; Blackman v. Hope Engineering & Supply Co., 11 La.App. 92, 120 So. 682; Patrick v. Grayson & Yeary, 13 La.App. 228, 127 So. 116; Brown v. Joseph Rathbone Lumber Co., 11 La.App. 599, 123 So. 383; Wroten v. Woodley Petroleum Co., 12 La.App. 348, 124 So. 542; Anderson v. Louisiana Oil Refining Corp., 16 La.App. 294, 134 So. 343; Joiner v. Texas & P. R. Co., 128 La. 1050, 55 So. 670; Craft v. Gulf Lumber Co., 151 La. 282, 91 So. 736; Hicks v. Meridian Lumber Co., 152 La. 975, 94 So. 903; Behan v. John B. Honor Co., 143 La. 348, 78 So. 589, L.R.A. 1918F, 862; Donahoe v. Scharfenstein & Son, 154 La. 815, 98 So. 256."
In the instant case, Dr. Cecil Clark of Cameron, Louisiana, a general practitioner, examined plaintiff sometime in December of 1956, before he was employed by the John W. Mecom Company. The doctor has no recollection of this examination or of ever having met plaintiff before the accident, but plaintiff's positive testimony *519 that he was the examining physician is uncontradicted. Dr. Clark testified at the trial that if he had examined Blanchard, he would not have approved his employment if he had found high blood pressure present at that time; that he had taken plaintiff's blood pressure before the trial and found it extremely high, and that he would not approve him for such work at the time of taking this reading. It was also the opinion of Dr. Clark that a blow on the head such as was suffered by Blanchard could cause or contribute to high blood pressure, although this would not be expected to follow such an accident under ordinary circumstances.
There being no other explanation given for the condition of high blood pressure found to exist in plaintiff immediately following the accident and which continued to the time of trial, under the proposition announced in Wroten v. Woodley Petroleum Co., supra, and McPherson v. Hillyer-Deutsch-Edwards, Inc., supra, it should be presumed that same resulted from such injury.
It is now well settled that where the medical evidence is in conflict, the Court may properly look to the lay testimony in resolving the question of disability in such cases, Vidrine v. Employers Mutual Liability Ins. Co. of Wis., La.App. 1st Cir., 1958, 103 So.2d 292; Rutherford v. Frost Lumber Industries, La.App., 57 So. 2d 914. As pointed out hereinabove, the lay testimony corroborates plaintiff's testimony as to his inability to work, and is uncontroverted in the record.
While this court is extremely reluctant to reverse the trial court on matters of fact unless there is manifest error, we feel that such is the case here, and that there was and is a causal connection between plaintiff's accident and injury and the disability from which he suffered at the time of the trial.
For the reasons stated, it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided, and set aside, and judgment is now rendered in favor of plaintiff, Louis R. Blanchard and against the defendant, The Travelers Insurance Company, for compensation as a total permanent disability to do work of any reasonable character, at the rate of $35 per week during the period of disability, not, however, beyond 400 weeks, beginning January 2, 1958, and for reasonable medical expenses not to exceed $2,500; subject to credit for compensation paid from January 2, 1958, to and including February 20, 1959, and all prior medical payments made; with legal interest on all deferred installments of compensation from and after February 20, 1959, from due date thereof until paid.
Defendant-appellee to pay all costs.

On Applications for Rehearing
PER CURIAM.
Application for rehearing filed in this matter in behalf of defendant-appellee, Travelers Insurance Company, suggests that this Court in its opinion held that the high blood pressure of plaintiff was found by the Court to be the sole cause of his disability at the time of the trial. This was not our finding, and a careful reading of the opinion will reflect that the Court held that plaintiff's symptoms of headache, dizziness, and extreme nervousness, when subjected to noise or strenuous labor, coupled with high blood pressure from which he had not suffered previous to the accident, persisted to the time of the trial and were disabling. There is ample medical evidence in the record to justify this conclusion.
Application for rehearing filed on behalf of the plaintiff-appellant suggests that, in accordance with the prayer of his petition, he should be allowed reasonable medical expenses not to exceed $10,000, instead of not to exceed $2,500 as set forth in our original opinion herein. The basis for this requested relief is alleged to be that the workmen's compensation policy issued by the defendant insured had in it a provision *520 providing for payment of medical expenses up to the larger amount, which is in excess of the statutory maximum, and that this agreement redounds to the plaintiff employee's benefit. Cummings v. Albert, La. App., 1 Cir., 86 So.2d 727. However, although the record reflects that coverage of compensation liability by the defendant insurer is admitted, we could find no evidence that the insurance policy in question did indeed contain such a clause to pay for excess medical costs.
Both applications for rehearing denied.