BROWN v. JOSEPH RATHBONE LBR. CO.

(June 24, 1929. Opinion and Decree.)
(October 21, 1929. Rehearing Refused.)
(December 3, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

Edward S. Spiro, of New Orleans, attorney for plaintiff, appellee.

John May, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. Plaintiff, a timber cutter by occupation, alleges that on December 9, 1926, while in defendant's employ at its lumber camp near Ponchatoula, La., and in the act of cutting down a large cypress tree, he was struck on the head by a falling branch with the result that the occipital and frontal bone of his skull was fractured; he alleges that he was rendered unconscious by the blow and removed to a hospital in New Orleans, where he was confined to his bed for forty-five days; that his injury caused severe headaches, impairment of vision, stiffness of the neck and pain in moving his head and that in consequence of his condition he is unable to perform work of any nature and will be totally and permanently incapacitated for work of any reasonable character; he alleges that his wages were $22.50 per week and that he was paid compensation by defendant at the rate of 65 per cent. thereof or $14.62 per week up to February 24, 1927, that notwithstanding the fact that he was

treated by defendant's physicians until July 1, 1927, no further compensation was paid to him; that when discharged by defendant's physicians on July 1, 1927, he was compelled to engage other doctors because of the refusal of defendant to give further medical aid, and that he has incurred obligations for such services in excess of the sum of $250, for which amount he sues in addition to compensation in the sum of $14.62 for 400 weeks with interest, less the amount paid him.

Defendant admits plaintiff's employment under circumstances entitling him to compensation for his injuries; it admits his injury but denies, however, that his skull was fractured; it admits the weekly wage and the payment of compensation on that basis to February 24, 1927; it also admits that the medical bills incurred by plaintiff were in excess of the sum of $250. It is contended, however, that when plaintiff was discharged on February 24, 1927, he had entirely recovered from his injury and that such physical disability as plaintiff may have suffered since that time was not due to the accident.

We are referred to paragraph 4 of section 8 of the Workmen's Compensation Law, which provides that:

"All findings of the fact must be based upon competent evidence, and all compensation payments provided for in this act shall mean and defined to be for injuries, and only such injuries as are proven by competent evidence, of which there are or have been objective conditions and symptoms proven, not within the physical or mental control of the injured employee himself."

Defendant argues that since the symptoms, complained of by plaintiff in this case, are subjective, under quoted provision there can be no liability because compensation can be recovered only for "such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven."

The object of this provision of the Compensation Law is to prevent imposition and fraud, but it is not intended to relieve an employer from the obligation to pay compensation within the limit fixed by the statute during the disability caused by the injury to the disabled workman, whether the objective symptoms have disappeared or not. It is only necessary that there should have been "objective conditions or symptoms proven," and such subjective result as may be imputed to the original objective condition is compensable under the law. The more fact that the wound in plaintiff's skull has healed is not important, the question is whether he has recovered from the effects of his injury.

As has been stated, defendant ceased paying compensation February 24, 1927, upon the ground that, at that time, plaintiff was no longer disabled as a result of the accident. However, the evidence shows that the same physician, Dr. Harrison, who had been treating plaintiff for defendant's account, continued to treat him up to July 1, 1927, plaintiff calling weekly at

his office and receiving certificates of illness which enabled him to obtain weekly benefits from an insurance company in which he had a small policy. These certificates bore the name of Dr. Harrison, defendant's physician and certified that plaintiff suffered from the result of "a fracture of the base of the skull."

It is explained that the treatment of plaintiff was continued upon a charity basis, for an illness which was not deemed to have been caused by the accident and that insofar as the certificates are concerned, they were issued without the knowledge of defendant's physician, by a clerk in his office.

In addition to Dr. Harrison, defendant introduced Dr. Connely, who testified that he was of the opinion that the symptoms, complained of by plaintiff, were due to toxic neuritis and not attributable to trauma. He found no evidence of any head injury. It was admitted that Dr. Menville, a radiologist, had taken x-ray pictures of plaintiff's skull and that the pictures showed no evidence of a fracture.

On the other hand, Dr. Rudolf, a general practitioner, believed that plaintiff suffered from the effects of his injury and he is corroborated by a specialist in nerves and mental diseases, Dr. Holbrook, who describes plaintiff's condition as "typical traumatic constitution or incapacity resulting from brain injury is my opinion. He is totally and permanently disabled. Later this may be changed to partial disability." When asked to explain why the x-ray pictures of plaintiff failed to reveal a fracture of the skull he answered: "The x-ray very readily shows fractures of the vault of the skull, but frequently there are fractures of the base of the skull that are not revealed by x-ray examination. That happens very often." In discussing the possibility of plaintiff's condition being attributable to traumatic psychosis, he answered, "From my point of view, it does not make much difference whether there was a fracture of the skull or not, because it is not the fracture of the skull that is important. It is the brain injury, and frequently severe brain injury takes place where there are no fractures * * *. The symptoms that Curtis Brown presents are symptoms of brain injury and not of fracture of the skull at all; fracture of the skull is incidental and it does not make any difference whether it is present or not, because brain injury may be just as extensive and the incapacity just as great whether the skull is fractured or not."

The testimony clearly preponderates in plaintiff's favor and convinces us that so far as medical science may determine, plaintiff's injuries and present disability are attributable to the accident which occurred while in defendant's employ.

The trial judge was of this opinion and rendered judgment accordingly. We find no error in his judgment and it is, for the reasons herein assigned, affirmed.