## DAILY v. TRANS-AMERICAN CONST. CO. et al.[*]
### No. 4928.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 2, 1934.

Irion & Switzer and Henry F. Turner, all of Shreveport, for appellants.

Harry V. Booth, of Shreveport, for appellee.

DREW, Judge.

Plaintiff sued for compensation alleging total permanent disability. He alleged that on December 29, 1933, while he was employed by the defendant Trans-American Construction Company et al., engaged in a hazardous occupation, he sustained an injury while assisting in carrying a heavy piece of iron piping. He described the accident as follows: That on the date aforesaid he, together with other workmen, were engaged in carrying a heavy iron pipe about 25 feet long by 4 inches in diameter, petitioner having the pipe on his left shoulder, with two fellow workmen in front of him and two behind him, assisting in the task, when suddenly and without warning, all of his co-workers removed the pipe from their shoulders, catching same in their arms, which act on their part placed all the weight of the pipe upon the shoulder of petitioner. He alleged that the sudden strain, pressure, and weight placed upon his shoulder by the pipe and the shifting of this weight suddenly to his arms, resulting in a severe strain and jerk, caused his foot to slip, whereupon he felt a severe pain and popping sensation in the lower sacro region of his back. On the following morning, he reported the accident to his employer and was immediately sent to the company's physician.

Plaintiff further alleged that prior to said accident he was in good physical condition and was able to do hard manual labor, but that subsequent thereto he was totally disabled to do any work of a reasonable character; that the accident caused a severe and permanent injury to the muscles, tendons, and ligaments of his back, particularly the spine, from the second lumbar vertebra to the tenth dorsal vertebra; that this condition prevents him from walking erectly or from making any movement necessary in the performance of manual labor; that his education was very limited and he is required to earn his living through manual labor alone. He alleged a salary at the rate of $3.20 per day and a working week of 7 days; and prayed for judgment in the sum of 65 per cent. thereof for a period not to exceed 400 weeks.

Defendants answered specifically denying each and every allegation of plaintiff's petition.

The lower court rendered judgment in favor of plaintiff and against defendant Trans-American Construction Company, and Globe Indemnity Company, its insurer, in solido, in the sum of $14.50 per week for a period not to exceed 400 weeks. From this judgment, both defendants have perfected an appeal to this court.

It was admitted on the trial below that the codefendant, Globe Indemnity Company, is the insurer of the Trans-American Construction Company.

For several years prior to the date of plaintiff's employment with defendant, he had been engaged in logging and farm work. It is shown that he had never suffered from any disease or accident which disabled him from performing manual labor. He was employed by the defendant company about the last of November, 1933; the greater part of his duties consisting of carrying or transporting first one thing and then another, railroad steel, etc., from one place to wherever such

*Rehearing denied December 5, 1934.

articles might be needed. He worked in a gang consisting of five men, but often the gang was split up. His wages were 40 cents per hour, 8 hours per day, and employed for 7 days a week.

Plaintiff describes the accident in the following language:

"Well, about five-thirty that evening I got hurt, I was toting pipe, was five of us toting pipe, and two on one end, two on the other end, I was in the middle, and we started out of the boiler house with the pipe and as we got outside I was not expecting them to lay the pipe down, of course, don't reckon they thought anything about, they just off the shoulder with it, that threw the whole weight on my shoulder, I turned sideways like, my right foot slipped and I fell."

He further stated that he did not fall to the ground. Plaintiff further testified that when the weight of the pipe was placed on him, he felt a "popping" in the region of the back; that he did not work any more that afternoon, but did not think his injuries serious. He went to his home and returned to the place of his employment the next morning and reported the occurrence to the time checker, stating that he was unable to work, and was immediately sent to defendant's physician for an examination. The physician strapped plaintiff's back and instructed him to take some soda every four hours and report back the following Monday.

On the night of the accident and the following day and night, plaintiff claims to have suffered much pain and on Sunday after the accident on Friday afternoon, he was suffering to such an extent that he attempted to get in touch with the company doctor. He was unable to do so and called an associate of the said doctor, who sent him some capsules. On the next day, Monday, at the instance of defendant's doctor, he was taken to a sanitarium in Shreveport where he remained for a period of 21 days under the treatment of one of the company's physicians. While in the sanitarium, he was also examined by Dr. Herold, who made the examination at the request of defendant. Plaintiff's treatment in the hospital consisted of electrical applications to the back, principally. At the end of 21 days he was discharged by the company doctor, although it is shown that his condition was little, if any, improved. It is shown that he had to be assisted to the automobile from his room in the sanitarium and was suffering severely. Plaintiff further showed that his left shoulder was wrenched as a result of the accident and that there had been little, if any, improvement in his condition up to the date of trial.

There can be no doubt, from the record in this case, that on the date of trial below plaintiff was totally disabled from performing manual labor of any reasonable kind.

■ Defendant contends first that there was no accident; and, second, if there was an accident, it was not the cause of plaintiff's present condition, but that it was brought about by focal infection. While it is true that plaintiff produced no witnesses to corroborate his testimony as to the accident, it is likewise true that defendant has failed to produce any witness who is willing to positively testify that the accident did not occur as plaintiff alleged and testified to. On this point defendant offered two witnesses who were working for the defendant company on the day of the alleged accident, to wit, December 29, 1933, both of whom testified that they did not recall any one getting hurt on that date, but neither of them could testify that they were in the gang of five that was carrying the pipe at the time plaintiff alleges he received the injury from the accident. Plaintiff frankly admits that he made no particular outcry at that time other than to mention the fact to a co-worker known as "Shorty." Shorty did not appear as a witness, although it is shown that plaintiff made a serious effort to locate his whereabouts.

We therefore must bear in mind that plaintiff at the time did not think he was seriously injured or that his injury was such which would prevent him from continuing his work the next day. This being true, there was no reason for him to make any outcry. Plaintiff's testimony as to the occurrence of the accident is reasonable and plausible and we find no testimony in the record to contradict it.

We are therefore convinced, as was the lower court, that the accident occurred just as related by plaintiff in his testimony.

■ The record discloses that plaintiff did have focal infection in that his tonsils were bad and his prostate likewise in bad condition. On January 27th, following the date of the accident, Dr. Cassity examined plaintiff. His examination, according to his testimony, discloses the following:

"Examination of the back shows on standing that spine is arched forward and on trying to stand up appears to be in severe pain; his spinal column is very stiff, on motion in all directions was definitely limited to almost nothing—the muscles along the spine from the second lumbar to the tenth dorsal verte-

brae are very rigid and painful on touch or motion and upper extremities restricted to horizontal to shoulder—and sprain of muscles of left shoulder."

He further testified that plaintiff was entirely disabled from performing manual labor, however, that he did not think the condition was permanent, but with the presence of the focal infection, his recovery would be delayed. Dr. Cassity examined plaintiff on the day of the trial below and found that he was just as rigid as he was when he examined him on January 27th; that he had no more motion in the shoulder than on the previous date; and that there was very definite arthritis in the left shoulder. He was also of the opinion that there was at that time arthritis in the lumbar joints; that they were very stiff and motion was greatly restricted, however, he said an X-ray would be necessary to absolutely determine that fact.

Dr. McIntyre and Dr. Paine made a joint examination of the plaintiff on February 9, 1934. Dr. McIntyre's diagnosis was myositis, or an enlargement of the muscles of the sacro lumbar region of the back, infected tonsils and prostate glands, as well as enlarged seminal vesicles. He further testified that plaintiff was unable to straighten his back without undue pain; that he walked bent over and the muscles were rigid and tense. He thought an X-ray should be made in about six months to determine whether arthritis was in the spine in this area. He found extreme tenderness on pressure over the muscles extending through and around the sacro lumbar vertebra. He testified that he believed the accident caused the shoulder to be bruised and caused the breaking of certain muscles, as when one takes too much exercise, and that he believed that the accident excited and caused the focal infection to start up; further, that plaintiff was totally disabled on the day of trial and that he was unable to testify as to the length of period this disability would extend over.

Dr. Paine agreed with the finding of Dr. McIntyre on most every point which would have any bearing on this case.

Dr. Edwards, a radiologist, who made a picture of plaintiff's spine and back, testified that the picture showed the spine and back were negative for any bone pathology, but that the X-ray plates would not disclose injuries to the muscles, tendons, ligaments, or other soft tissues of the back.

Dr. Slicer, defendant's physician, examined plaintiff on December 30, 1933, and on January 2, 1934. He did not find any visible evidence of trouble and no objective symptoms of injury. He sent plaintiff to the sanitarium where he turned the case over to his associate, Dr. Boone. He did not examine plaintiff's tonsils or prostate glands and stated that the majority of the back strains were generally cured in from 1 week to 6 months.

Dr. Boone testified that he could not find very much on examination of plaintiff and that the only thing he got from the examination was what plaintiff complained of. There was no injury that could be seen and that he just palpated over the muscles of the back; that plaintiff claimed upon palpation that they were painful, but that he (Dr. Boone) could not state for sure whether or not the spasticity was due to injury or not. He therefore gave as his opinion that the muscles at that time were sore. He testified, assuming some disability in the back, that recovery should be had in from 3 to 6 months with proper treatment. After testifying that the muscles in plaintiff's back were rigid and firm, Dr. Boone was asked the following question:

"If it is there from the beginning, if the patient states he hears a popping in his back and the pain is there from that time on to the time of your examination, would that indicate to your mind he sustained some sort of traumatic injury? A. I say that he had sustained an injury."

He further admitted the probability of the injury causing the focal infection to flare up.

Dr. Herold examined plaintiff on January 19, 1934. His finding as to the focal infection was the same as the other doctors and he testified that said infection was a common cause of arthritis. He also testified that plaintiff complained of pain and that he found some rigidity in the muscles of the sacro lumbar region; however, that focal infection would cause pain of the nature complained of and that the focal infection would retard recovery of any injury that plaintiff might have received, and that he would not recommend heavy manual labor for plaintiff until the causes of the complaint be first eliminated. Dr. Herold further testified that he did not expect a person to tell the truth where he was suffering from focal infection and state that he had pain when he had a damage suit pending; that a suit always caused a patient, consciously or subconsciously, to exaggerate his symptoms; that it was human nature to do so; and that when examining a patient who had a claim or lawsuit, he bore that thought in mind.

We are convinced from all the testimony that the accident occurred as plaintiff alleged and that the injury resulting therefrom either caused the present disability of plaintiff directly or that it excited and caused the focal infection which plaintiff had to flare up, and in either instance, plaintiff would be entitled to recover. The undisputed fact in the case, which is that plaintiff had never suffered from the focal infection prior to the date of the accident; that he had been constantly and daily performing hard manual labor for a period of several years without any complaint; and that immediately after said accident he suffered pain and has been unable to perform manual labor of any kind since that date, is most convincing of our finding above.

We find no error in the judgment of the lower court and it is affirmed, with costs.