**FRANTZ v. SCHROEDER.***

No. 16104.

Court of Appeal of Louisiana. Orleans.

Nov. 18, 1935.

Martin E. Kranz and M. C. Scharff, both of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, for appellee.

WESTERFIELD, Judge.

Charles E. Frantz, alleging that he was injured while in the employ of William J. Schroeder, brought this suit for compensation at the rate of $12.03 per week for 400 weeks, plus $250 for medical and hospitalization fees.

The defendant, in his answer, admitted the employment of plaintiff, and averred that, though he had paid plaintiff compensation at the rate of $12.03 per week for a period of ten and one-half weeks, "petitioner did not sustain injuries disabling him from work and * * * medical examination and treatment was proffered and compensation paid solely for the purpose of giving petitioner the benefit of all doubt."

There was judgment below awarding plaintiff compensation at the rate of $12.03 from November 9, 1933, to February 26, 1934, or about fifteen weeks, subject to a credit of the amount previously paid him. The plaintiff appealed, and the defendant

*Rehearing denied Dec. 16, 1935. Writ of error granted by Supreme Court Feb. 3, 1936.

148

answered the appeal asking that the judgment be set aside.

The injury which plaintiff alleges he sustained is described as a "sacroiliac" strain of the back, which is said to have been received while plaintiff was raising a barrel of molasses in the act of delivering it for account of his employer to the Hartson Grocery Store. Friends reported his injury to his employer, and he was sent to Dr. Geismar for treatment. Dr. Geismar, according to Frantz, treated him for about ten weeks, when he became dissatisfied and went to see Dr. Edw. H. Maurer. Dr. Maurer testified that he first saw Frantz on March 8, 1934, at which time he was complaining of a pain in his back; that he made a thorough examination and found that he had a "right sacroiliac and sacrolumbar strain" and advised him to wear a belt. He sent Frantz to the Charity Hospital for X-ray pictures, which revealed a congenital abnormality which he termed a "sacralization of the fifth lumbar vertebra," but no other abnormality. He saw Frantz for the last time on August 15, 1934, and told him that he was well and able to go to work. On cross-examination Dr. Maurer testified that a sacroiliac strain could not be revealed by an X-ray plate and that from his examination he was unable to find any objective symptoms of sacrolumbar or sacroiliac strain.

Dr. Edw. S. Hatch, who appeared as an expert on behalf of defendant, testified that he examined Frantz on February 3, 1934, and, after stating in detail the nature of his examination and the treatment which he had prescribed, declared that Frantz had a definite spinal wrench, or, to use his own words, "he impresses me as a man who has had a definite spinal wrench." But Dr. Hatch, like Dr. Maurer declared that plaintiff exhibited no objective symptoms of injury, and, like Dr. Maurer, his diagnosis of Frantz's disability was based entirely upon what Frantz told him concerning his pain and suffering.

Dr. Geismar, who first treated plaintiff, did not appear as a witness.

Subsection 4 of section 18 of Act No. 20 of 1914, as amended, reads in part as follows:

"* * * All compensation payments provided for in this act, shall mean and be defined to be for injuries and only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."

"Objective symptoms" have been defined to be:

"Those symptoms which a physician by the ordinary use of his senses discovers from a physical examination. They are to be distinguished from subjective symptoms, which are those which he learns from the expressions of the patient. (See Reeder v. Thompson [120 Kan. 722] 245 P. 127)." Ballentine's Law Dictionary (1930).

In Brown v. Joseph Rathbone Lumber Co., 11 La. App. 599, 600, 123 So. 383, we said:

"The object of this provision of the Compensation Law [sub-sec. 4 of sec. 18, as amended] is to prevent imposition and fraud, but it is not intended to relieve an employer from the obligation to pay compensation within the limit fixed by the statute during the disability caused by the injury to the disabled workman, whether the objective symptoms have disappeared or not. It is only necessary that there should have been 'objective conditions or symptoms proven,' and such subjective result as may be imputed to the original objective condition is compensable under the law. The mere fact that the wound in plaintiff's skull has healed is not important, the question is whether he has recovered from the effects of his injury."

In the instant case it is apparent from our review of the medical testimony that Frantz exhibited no objective symptoms of injury, or, at least, there were no "objective conditions or symptoms proven" and such symptoms as were established were "within his physical or mental control." The statute, therefore, raises an insuperable bar to his recovery. It is true that compensation has been allowed for injuries due to sacroiliac strain. Aultman v. Louisiana Central Lumber Co., 14 La. App. 179, 128 So. 683; Daily v. Trans-American Construction Co. (La. App.) 157 So. 290; Brown v. Yazoo & M. V. R. Co. (La. App.) 159 So. 154. But in all of the cases in which recovery for sacroiliac strain was allowed, in which the point was raised, objective symptoms were proven.

It would appear from the testimony of Drs. Maurer and Hatch, the only medical experts whose testimony is found in the transcript, that a sacroiliac strain is not susceptible of discovery by examination ei-

ther by means of X-rays, or otherwise, and that, therefore, such maladies exhibit subjective symptoms only; the physician being compelled to rely upon the statements of his patient as to the location of his pain and its character and severity. This conclusion is irreconcilable with the facts found in Aultman v. Louisiana Central Lumber Co., supra, where recovery was allowed for disability due to sacroiliac strain because objective symptoms were proven by X-ray examination. Perhaps the explanation lies in the fact that all sacroiliac strains are not characterized by the same manifestations or symptoms; but, whatever may be the situation in other cases, here the evidence is most positive and conclusive to the effect that there were no objective symptoms. Consequently, there can be no recovery in view of the language in the statute.

For the reasons assigned the judgment appealed from is reversed, and it is now ordered that there be judgment herein in favor of the defendant, dismissing plaintiff's suit at his cost.

Reversed.