Reverend Stovall, a fifty-two year old negro, who resides in Jayess, Mississippi, brings this suit against the American Employers Insurance Company, the insurance carrier of his employer, W. Horace Williams Construction Company, claiming to be totally disabled as a result of an accident sustained in the course of his employment on May 10, 1943. He asks for 400 weeks compensation at the rate of $16.90 per week, beginning May 10, 1943 less a credit of $741.80.
The defendant answered admitting the accident and averring that it had paid plaintiff compensation at the rate claimed for a period of 41 weeks or $692.90 and that no further payments were made because plaintiff had completely recovered from the results of the accident.
There was judgment below in plaintiff's favor as prayed for with a slight difference in the credit allowance, it having been stipulated that the credit should be $692.90 and not $741.80 as stated in plaintiff's petition. Defendant has appealed.
Reverend Stovall, who, incidentally, has no connection with the Ministry, Reverend being his given name, was employed by the W. Horace Williams Construction Company as a laborer. On May 10, 1943, while loading a wheelbarrow with sacks of cement, he was injured when six of the sacks, weighing 100 pounds each, fell on his back. He sustained a "chipped fracture of the anterosuperior edge of the body of the fourth lumbar vertebra". He was treated by the defendant's physician, Dr. Joseph T. Scott, who placed him in a Plaster of Paris cast for a period of three months, then a steel brace for another three months, and finally he was given a "lumbar sacral belt" to wear. He was discharged as completely cured and capable of returning to work on February 24, 1944.
Plaintiff, however, contends that he is suffering from the effects of the accident and is unable to work because of a pain which he experiences in the middle of his back whenever he attempts to do so. *Page 322 
Three doctors testified in plaintiff's behalf. Dr. E.H. Maurer, an orthopedic specialist, and Drs. C.P. May and Sam Nelken, Neuropsychiatrists. All three of these experts testified unequivocally that, in their opinion, plaintiff was totally disabled as a result of the accident of May 10, 1943.
On behalf of defendants, Drs. H. Theodore Simon and George C. Battalora, orthopedic specialists, and Dr. H. Randolph Unsworth, a Neuropsychiatrist, expressed the belief that the plaintiff was a malingerer and that he suffered no pain and was under no disability since his discharge by Dr. Scott on February 24, 1944.
The learned trial judge, in his reasons for judgment, said: "The doctors produced by the defendant testified that plaintiff is a malingerer. In this opinion I am unable to concur. I had the opportunity to observe the plaintiff on the witness-stand and in and about the courtroom on the days of the trial. I purposely tested him on two occasions by having him walk from one side of the courtroom to the other without his knowing the reason therefor. He is an honest country negro and, after due consideration, there is no doubt that the plaintiff was injured; that he had objective symptoms at the time of the accident; that he is still suffering as a result of the accident; that he is not a malingerer; that he is unable to work, and that he is entitled to compensation for total disability."
Stovall owns and cultivates about 51 acres of land and on occasion he helps his wife and three children in the farming operations. He "pulled corn" and otherwise conducted himself in a manner, which defendant contends is inconsistent with his claim of total disability. The fact that his wife and three children help him and do most of the work, it is said does not detract from the effect of the evidence concerning his labors on the farm. Defendant's counsel assert that too much importance is attached to plaintiff's statement that he suffers pain in his back considering that there is no clinical evidence of abnormality. In other words, since pain is subjective only, it would be a dangerous precedent to award compensation upon the basis of an employee's assertion that he suffers pain in the absence of any objective symptom. Counsel quote the following from Aloisio v. Seims-Helmers, Inc., La. App., 161 So. 334, 335: "The question, then, which confronts us, is this: 'When there has been a serious injury, evidenced by objective symptoms, and compensation has for a time been paid, should the courts award further compensation on the unsupported statement of the claimant that he continues to suffer pain, although there is no objective or discoverable pathological reason therefor?' "
This inquiry posed by the Court was answered in the negative, but it will be observed that the medical testimony in that case was unanimous and to the effect that the employee's condition had bcome normal, though they differed as to the time. We said in the Aloisio case: "We feel that there can be adopted no fixed, unalterable rule that, in such situation, the views of the doctors must always be accepted, and we realize that there may be cases in which, to reject the statement of a previously injured employee that he is still suffering pain merely because the truth of such statement cannot be proven by objective symptoms, will work injustice. Perhaps, this is such a case. But we are much impressed with the thoroughness with which each of the doctors examined the plaintiff here, and with the certainty with which to our minds each possible cause for pain has been shown not to exist."
Here there is, as we have pointed out, no unanimity of medical opinion. In fact, there is an equal division among the six medical experts, three of whom assert that they are positive that plaintiff suffers as a result of his injury and that he is totally disabled, while the other three maintain that he is a malingerer.
Dr. May testified that objective symptoms of the plaintiff's injury still existed at the time of the trial two and one half years later. For example, he said that Stovall exhibited diminished and unequal knee jerks. "As a matter of fact, at the time of *Page 323 
my first examination I was unable to bring out his knee jerks at all. I also found from my examination of the man that he was suffering pain in his back; that he could not stoop beyond a certain point without giving evidence of suffering pain and I attributed that pain to the fact that the X-rays which had been made at the Charity Hospital, the report of which I saw, showed that the man had hypertrophic spinal arthritis."
Dr. Nelken testified that plaintiff might be suffering from "traumatic neurosis", and when asked whether his opinion concerning the total disability of plaintiff would be affected by knowledge of the fact that Drs. Battalora and Simon had expressed a contrary view, he answered in the negative.
The main contention of defendant's counsel is that there are no objective symptoms and that no one can say whether the claim that the plaintiff is in pain is genuine or spurious, which is, of course, true as is very well put by Dr. Nelken, who is convinced that plaintiff is sincere, "There is no test as to the genuineness of pain, which is altogether satisfactory because pain is private experience which always has to be told to someone else to know about it. The only authority on pain is the person who has it."
[1] Section 18, subd. 4, of the Compensation Act, as amended by Act No. 85 of 1926, p. 122, provides: "All compensation payments provided for in this act, shall mean and be defined to be for injuries and only such injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself."
But as was said in Brown v. Joseph Rathbone Lumber Company, 11 La. App. 599, 123 So. 383: "The object of this provision of the Compensation Law (sub-sec. 4 of sec. 18, as amended) is to prevent imposition and fraud, but it is not intended to relieve an employer from the obligation to pay compensation within the limit fixed by the statute during the disability caused by the injury to the disabled workman, whether the objective symptoms have disappeared or not. It is only necessary that there should have been 'objective conditions or symptoms proven,' and such subjective result as may be imputed to the original objective condition is compensable under the law."
In Vega v. Higgins Industries, Inc., La. App., 23 So.2d 661, 662, a case in which several of the medical experts who testified in this case appeared as witnesses, the question was there, as here, whether the plaintiff, who had been injured and paid 52 weeks compensation, had recovered or not. In other words, Vega claimed to be totally disabled and his employer that his disability did not extend beyond 52 weeks for which he was paid compensation, and that, thereafter, he was a malingerer. "Here the injured workman (Vega) exhibited objective symptoms following the accident, consequently the question is whether his present condition may be said to be caused by his injury."
We concluded that the medical testimony preponderated in plaintiff's favor and awarded judgment accordingly.
In the case of Frantz v. Schroeder, 184 La. 945, 168 So. 110, cited in the Vega case, it was held that this Court was in error in refusing to permit the plaintiff to recover on the ground that there were no objective symptoms of the injury claimed to have been sustained by Frantz. In that case there were two medical experts who testified. Both agreed that there were no objective symptoms of Frantz' injury. The Supreme Court, however, in an opinion reversing the judgment of this court, 164 So. 147, said that the fact that a "barrel of molasses suddenly fell against him and brought him down on his knees, causing him severe pains and weakness about his back to such an extent that he was forced to immediately discontinue his work and call his employer, who, within a half hour, replaced plaintiff and took him in his own car to Dr. Geismar for treatment. This testimony was uncontradicted by the defendant. It is our opinion that it sufficiently established the occurrence of an accident and resulting injuries for which the statute allows compensation." [184 La. 945, 168 So. 111.] *Page 324 
[2] The fact that Stovall was able to perform some services in the operation of his farm in Jayess, Mississippi, is unimportant. The evidence indicates that he did very little and for a very limited time. Moreover, even though he was capable of driving a plow or managing his farm, the test is whether he is capable of performing the laborious work of the occupation which he was engaged in at the time of the injury. Hecht v. Higgins Industries, Inc., La. App., 25 So.2d 351; Butzman v. Delta Shipbuilding Company, La. App., 21 So.2d 80; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6.
[3] While the medical testimony may be said to be in balance, there being three favorable to plaintiff and three opposed, the fact that the trial judge was convinced, not only from plaintiff's testimony, but from personal observation, that Stovall was sincere and was not a malingerer, is an important factor in tipping the scales in plaintiff's favor.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
JANVIER, J., takes no part; absent.