GLADNEY, Judge.
This appeal is from a judgment awarding plaintiff workmen’s compensation in the sum of $30 per week during disability not to exceed four hundred weeks, subject to credit for payments made for a period of fourteen weeks. The record affirmatively discloses the only issue between the litigants concerns the extent of and duration of plaintiff’s disability resulting from an accident of his employment on February 9, 1953. Appellants contend that in the trial court plaintiff failed to establish the existence of any compensable disability beyond the period for which he was paid workmen’s compensation.
Plaintiff was engaged as a common carpenter by his employer, Spohrer-Pollard, Contractors, and at the time of his accident he was engaged in construction work on a bridge in Ouachita Parish,' Louisiana. He and his carpenter helper, Rock Elmore, were then engaged in putting into position a piece of steel weighing several thousand pounds. The steel was elevated on pieces of “four by four” and Wallace and Elmore had their crowbars underneath the steel *313 moving it into place when the steel suddenly dropped and fell upon the crowbar being rigidly held by plaintiff with the result that it jerked his entire body and caused a severe strain upon his back. Plaintiff immediately told his helper that he was hurt and reported the fact also to his foreman, Pat Cooper, who put him to doing lighter work during the rest of the day. Plaintiff reported back to work during the two following days but was given extremely light work. On the last day he reported to Mr. Cooper he became so weak that a fellow employee, H. E. Stewart, held him up to prevent him from falling. Mr. Harris, the superintendent, was notified and plaintiff was taken to the office of Dr. Edward M. Foster of West Monroe, where he was given sedation and then carried home and put to bed.
On February 13th Mr. Harris arranged for plaintiff to be conveyed to the office of Dr. Hayden Cutler for treatment. Dr. Cutler after an examination, and because of acute and persistent pain, hospitalized plaintiff in the St. Francis Sanitarium on February 13th, where he remained until February 20, 1953. During this period of hospitalization Wallace was examined and visited by Dr. A. Scott Hamilton, an orthopedic specialist, and Dr. J. Q. Graves. Dr. Hamilton made a temporary diagnosis of herniated disc between the fourth and fifth lumbar vertebrae, a finding already considered by Dr. Cutler. Wallace was placed in traction for several days and subsequently fitted with a brace which he continued to wear through the date of trial. Dr. Cutler saw plaintiff periodically during his stay in the hospital and subsequently on April 8th, May 15th and June 13th, the latter being the last occasion on which he saw plaintiff. Plaintiff continued to make complaints of his back injury to Dr. Cutler on June 13, 1953. During his observation Dr. Cutler at first suspected a ruptured disc and found plaintiff’s complaints consistent therewith. On the examination of May 13th he observed a slight spasm of the par-avertebral muscles in the second and third lumbar area. On June 13th plaintiff was still complaining he could not work and that his back would give out. Dr. Cutler noted at that time he had a little pain in his right back and at' that time also the patient complained of pain in the right side of his neck. Dr. Cutler surmised that there was a great deal of nervous tension mixed up with the backache. The employee’s disability as of June 13th was rated by the doctor as from five to ten per cent. After June 13, 1953, Dr. Cutler did not make further examination.
On or about May 14, 1953, upon reference by Dr. Cutler, a myelogram was performed on Wallace with the result that X-ray and fluoroscopic views revealed no pathology involving the portion of the spinal canal subjected to the test. In describing the effect of a myelogram, Dr. Hamilton gave the following explanation:
“The intervertebral disc does not cause a shadow on an X-ray film. In order to bring out the presence or absence of a disc protruding into the spinal canal, an opaque substance, that is a substance which is impervious to X-rays, is introduced into the spinal canal; Generally it is an oily substance which contains a very high percentage of hyodal. The name of the substance generally used at this time is panto-paque. The pantopaque is injected in a small quantity, generally slightly more than a teaspoonful into the spinal canal and when it reaches a disc which is protruded or ruptured, it has to flow around it in order to go downward or upward since the oily solution is heavy and will flow toward the head or foot of the patient according to the way that the X-ray table is tilted. As the pantopaque flows by the, ruptured or herniated disc, a dent is made in the column of the pantopaque. The fluoroscope is used to detect such a dent and whenever it is found, an X-ray film is made immediately. This then will give a permanent record of not only the presence of a dent in the column of pantopaque but also the level at which it occurs. In the absence of a ruptured or herniated disc, there is no dent or *314 indentation of the column of panto-paque. It is in the form of a simple cylinder.”
******
“In my opinion the negative myelo-gram is only an adjunct and when taken and compared with a positive physical examination, I would believe the physical examination, but if the physical examination is negative and the myelogram is negative, I am perfectly willing to make a diagnosis of no disc.”
It is made clear from the testimony of both Drs. Cutler and Hamilton that they strongly suspicioned an intervertebral disc injury through physical examination until 'the result of the myelogram was known. Thereafter their diagnosis was of a back strain or sacroiliac strain. Other findings were negative. Dr. J. Q. Graves from the outset made a diagnosis of a mild back strain which he estimated should have healed within a period of six weeks.
Testifying on behalf of plaintiff were Drs. Irving J. Wolff, C. H. Hill and J. E. Walsworth, who examined plaintiff between the dates of September 19, 1953, and January 15, 1954, and all of whom reported that at the time of their examinations and at the time of the trial, which was commenced on January 26, 1954, plaintiff was totally disabled to perform his work. Drs. Cutler, Hamilton and Graves all considered plaintiff able to return to his occupation as of the time compensation payments were discontinued. In addition to the doctors mentioned, Dr. Edward M. Foster, who first gave treatment to plaintiff after his injury but who saw him just a short time, and at that time without extensive examination, made a diagnosis of a sprained back. Dr. Charles Lobrano also testified but only to the effect that certain X-rays taken by him at the request of Dr. Cutler were negative as to any bone pathology.
In addition to the medical testimony concerning his physical condition, plaintiff presented the testimony of eight lay witnesses. Rock Elmore and H. E. Steward corroborated plaintiff as to his complaints immediately upon the occasion of the accident. This fact however, is not disputed by .defendant since the only issue before the court is the question of the extent and duration of plaintiff’s injury. Jerry M. Beach, Joe Lively, Oscar Rockmore and plaintiff’s wife, mother and Joe W. Wallace all testified to plaintiff’s apparent inability to substantially perform any sort of work.
At the time of trial plaintiff was forty-seven years of age, and was the father of ten girls, all of whom depend upon his support with the exception of the oldest, who is married to a member of the military forces and contributed in some measure to the support of the family. There is no indication that plaintiff has filed other suits or made unsupported claims. He appears to have been steadily employed before the instant employment- and lay testimony strongly established that prior to his injury he was a good provider. After consideration of all the evidence the trial court reached the conclusion that there was ample evidence to support a finding that plaintiff was entitled to compensation and rendered judgment accordingly.
Though defendants insist their medical experts were in a better position to appraise plaintiff’s disability than those called to testify on behalf of plaintiff, we are persuaded that the back injury, such as complained of by plaintiff, can not be diagnosed with absolute certainty and the duration and extent of the disability resulting therefrom determined with exactitude. Whether or not plaintiff was suffering from a herniated disc or a sacroiliac strain we do not feel called upon to decide. Nor does plaintiff have to show the exact nature of his disability under the Workmen’s Compensation Act, LSA-R.S. 23:1021 et seq., so long as it is reasonably apparent that he is suffering from such disability that he cannot perform his usual duties. We think the uncertainty of a correct diagnosis in the instant case is disclosed by the qualification of their own impressions of plaintiff’s injuries as reflected in the testimony of Drs. Cutler and Hamilton. Even the myelogram test does not impel a positive conclusion. It would seem that it is to be relied upon more in cases there it gives affirmative evi *315 dence of a herniated disc rather than when it fails to disclose the presence of the herniation. This inconclusiveness is not infrequently found in other tests resorted to by medical science, the sputum test for tuberculosis being one instance.
We have reached the conclusion from the record as presented that plaintiff had not fully recovered from his disability at the time his compensation payments were terminated, and in reaching this decision we rely to a considerable extent upon the credible testimony of the lay witnesses who uniformly stated plaintiff was still disabled at the time of trial. We have no doubt our brother of the district court attached weight to the testimony of plaintiff’s family, neighbors and friends concerning his disability.
We think that upon the record as here presented on appeal, manifest error in the judgment from which appealed is not disclosed and the judgment from which appealed is affirmed at appellant’s cost.