102 So.2d 518 (1958)
R. L. JOHNSON
v.
ATLANTIC AND GULF STEVEDORES, Inc.
No. 21054.
Court of Appeal of Louisiana, Orleans.
April 28, 1958.
Rehearing Denied May 26, 1958.
*519 Deutsch, Kerrigan & Stiles, Christopher Tompkins, New Orleans, and Marian Mayer, New Orleans, of counsel, for defendant and appellant.
Zelden & Zelden, New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
This is a workmen's compensation suit. Plaintiff, a longshoreman, while working in that capacity for the defendant on January 3, 1956, was injured when his heel caught in a piece of dunnage causing him to fall. He bent his elbow and twisted his heel but later complained of pain in his right arm and back. Alleging total and permanent disability, he claims compensation at the maximum rate for a period of 400 weeks, together with medical expenses and penalties.
The trial judge thought plaintiff was permanently and totally disabled and awarded him compensation not to exceed 400 weeks at $30 per week, subject to a credit of $360 representing twelve weeks' compensation previously paid, plus $110 for medical expenses. The fees of two of plaintiff's expert medical witnesses were taxed as costs.
Defendant has appealed.
Plaintiff was paid compensation for the period January 3, 1956, to March 27, 1956, and the only question posed for consideration is whether the accident rendered him totally and permanently disabled from doing work of any reasonable character.
Plaintiff is an obese man, weighs 260 pounds, and is 6 feet 3 inches in height.
He was sent to Dr. Samuel A. Romano, surgeon, "the company doctor." This physician, upon examining plaintiff the day following the accident, concluded that his injuries consisted of bursitis, contusions of the lower back, and a mild sacroiliac sprain. X-rays were negative for fractures, dislocations or bone pathology. The physician stated that plaintiff made continual complaints of pain in the lower back and was fitted with a sacroiliac supporter. Dr. Romano's course of treatment consisted of heat therapy and pain reducing injections, and in all he saw plaintiff some fifteen or sixteen times. It appears he could not reconcile the patient's subjective complaints with his physical findings. Dr. Romano on March 7, 1956, referred plaintiff to Dr. George D. B. Berkett, orthopedic surgeon, for appraisal whose report was that plaintiff had fully recovered from the effects of the accident without residual disability. As a result of this report from Dr. Berkett, Dr. Romano discharged plaintiff from further treatment on March 26, 1956.
When no further medical treatment was forthcoming from defendant, plaintiff went to the Charity Hospital on April 10, 1956, complaining of pain in the back and both legs. The nature of the treatment, if any, at the hospital does not appear in the record. The medical chart indicates that the physicians were more interested in having plaintiff reduce his weight, the last entry bearing the date of February 5, 1957, stating that if plaintiff lost about twenty more pounds he would be admitted for a myelogram.
Plaintiff visited Dr. Henry E. Braden, III, his private physician, on December 7, 1956, and was treated for twelve to fifteen times with pain-relieving medicines. Dr. Braden could not reconcile the complaints of back pains with what he found and thought the complaints greatly exaggerated. However, he sent the patient to Dr. Byron M. Unkauf, an orthopedist, suggesting a myelogram, which is a test by injecting an opaque substance into the nerve canal which runs along the spinal column. *520 We understand that if a spinal disc outside the canal is herniated or ruptured, its substance will push inward and the opaque dye will be interrupted or diverted in its flow as the patient's body is rotated. These interruptions will show under X-rays as defects in the column of dye.
The myelogram was performed the same day, December 31, 1956, by Dr. Unkauf with Dr. Charles Lilly, radiologist, in attendance. After making fluoroscopic examinations during the course of the myelogram and examining the X-rays taken, both these physicians were of the positive opinion that the claimant is suffering from a ruptured disc at the level of the fourth and fifth lumbar vertebrae. Dr. Unkauf's opinion was that plaintiff's physical condition is such that he cannot return to work.
On behalf of defendant, Dr. Berkett viewed the X-rays that were made when the myelogram was performed, and his conclusion was that the V-shaped defect just above the fourth interspace does not represent a ruptured disc. Dr. Howard Karr and Dr. Richard H. Corales, neurosurgeons, also examined the X-rays on behalf of defendant and testified that the defect shown on the films was of no significance and that the myelogram was negative. Dr. Richard W. Levy, also a neurosurgeon of defendant, stated that in his opinion the myelogram was inconclusive.
After hearing all of the evidence and observing the witnesses as they gave their testimony, the trial judge believed Dr. Unkauf and Dr. Lilly who conducted the myelogram rather than the other physicians. We agree this is fully warranted.
It was generally conceded by the physicians testifying for defendant that making a diagnosis of a ruptured disc is not an easy matter because there is no particular symptom or group of symptoms which are always present or that the symptoms will appear with the same degree of intensity. Dr. Berkett in his testimony indicates very definitely that the symptoms for this type of injury vary from person to person and that sometimes you "get into the realm of guesswork." He also stated that sometimes a ruptured disc is present without any symptoms at all.
In this case the testimony of Drs. Unkauf and Lilly should be believed for they were present and could observe the myelogram as it was performed, especially the fluoroscopic examination of which the defense doctors had not the benefit. They were relegated to viewing the still X-ray films. Drs. Berkett, Levy and Corales, in response to interrogation by the trial judge, admitted that the physicians in attendance at the myelogram, who had the opportunity of observing the fluoroscopic examination as well as the flow of the opaque fluid injected into the patient's spine, were in a better position to make a correct diagnosis as to what was revealed by the myelogram.
Our over-all conclusion is that the plaintiff is not simulating the back pains he claims to suffer and there is pathology in his back which renders him unable to return to his job as longshoreman or to do work of any reasonable character. This condition is attributable to his accident and we believe he is a subject for compensation. Even if his injury is not a ruptured disc, still he should recover. The mere fact that a compensation claimant is unable to specifically identify or indicate the type of injury he has sustained does not preclude a recovery of compensation. The test is disability vel non and not the nature of the injury. Wallace v. Spohrer-Pollard Contractors, La.App., 76 So.2d 312; Dixon v. T. J. Moss Tie Co., La.App., 70 So.2d 763; Brown v. Joseph Rathbone Lumber Co., 11 La.App. 599, 123 So. 383.
Defendant endeavors to liken this case to Washington v. Swanner, La.App., 98 So.2d 913, decided by us, and in which we denied recovery of compensation to the plaintiff because his alleged inability to work was sought to be proven by the testimony *521 of a physician who had seen him for the last time seven months before the trial at which time plaintiff was undergoing treatment by another physician. Plaintiff's medical expert admitted that it was possible that the plaintiff might have recovered in the interim.
But no such circumstance appears in the instant case. Dr. Unkauf examined plaintiff some five months before the trial, but a reading of this physician's testimony reflects that although he did not examine the man subsequent to that time, he was positive that since there had been no operative procedure on the claimant's back, there could not have been any change in his condition, and that insofar as the witness was concerned, the plaintiff was unable to resume his former duties and is totally disabled.
The judgment is affirmed.
Affirmed.