CHASEZ, Judge.
Plaintiff, Thomas Pacaccio, seeks in this suit to recover Workmen’s Compensation benefits for permanent and total disability claimed to have resulted from an injury to his lower back suffered on June 22, 1960, while employed by defendant, Avondale Shipyards, Inc. From a judgment denying recovery, plaintiff brings this appeal.
The'only issue in this appeal is whether the injury caused permanent and total disability.
Plaintiff’s principal medical expert witnesses were Dr. David A. Freedman, a neurologist and psychiatrist, and Dr. Henry C. Mostellar, a fourth-year resident in neurosurgery, who had participated in treating plaintiff. Drs. Freedman and Mostellar *842 saw plaintiff for 'the first time almost two years after the injury to his lower back. At that time they found lumbar and cervical osteoarthritis; a healed compression fracture of lumbar vertebra L-2; Horner’s syndrome; and adhesive arachnoiditis in both the lumbar and the cervical spine. They consider the arachnoiditis a disabling condition. They diagnose this condition principally on the basis of certain myelo-grams. In their opinion the arachnoiditis may have been caused by or, if it preexisted, aggravated by the injury to plaintiff’s lower back. In view of plaintiff’s reportedly symptom-free history prior to the injury, they consider the injury the probable cause (or aggravation) of the arachnoiditis and of plaintiff’s present difficulties. Dr. Freedman expressed the view, with reservations as to the medical propriety of separating the lumbar area from the balance of the spine, that plaintiff would be permanently disabled from engaging in his occupation of sheet metal worker, on account of the lumbar arachnoiditis condition alone.
Defendant’s experts included Dr. Howard Karr, a neurosurgeon, and Dr. Timothy James Haley, a radiologist. They testified positively that the myelogram, upon which plaintiff’s experts’ arachnoiditis diagnosis was ■ based; was improperly made. Their testimony was that the opaque substance, or dye, which must be injected into the subarachnoid canal for a proper myelogram, was very largely injected into the subdural space, between the dura and the arachnoid. They compared the situation to placing air between a tire casing and the innertube, rather than into the innertube. They held the myelogram worthless for diagnostic purposes, and testified that the myelogram.' therefore does not indicate arachnoiditis.
Further doubt is cast on the myelogram by plaintiff’s witnesses themselves. Dr. Mostellar could not definitely recall whether he was present for the fluoroscopy when the myelogram was made,'although he made the dye injection and testified as to difficulty in removing the dye. Dr. Nicholas A. Chetta, a radiologist called by plaintiff, also indicated he might question the myelogram’s value if the dye subsequently filtered out into certain tissues. There was in fact some filtering, but whether into the tissues Dr. Chetta had in mind is not clear.
The District Judge was of the opinion that the myelogram X-rays had to be disregarded. Certainly, under the circumstances recited above, we cannot find that conclusion manifestly erroneous. We agree with the District Judge that plaintiff has not proven arachnoiditis as a result of his injury.
Defendant’s principal medical expert was Dr. George C. Battalora, Sr., an orthopedist. Plaintiff had been referred to Dr. Battalora by defendant’s industrial surgeon, Dr. Dyer J. Farley, about two months after the injury. X-ray findings by Dr. Battalora at that time included a fracture through the left transverse process of the third lumbar vertebra, and mild hypertropic changes in the lumbar spine. Dr. Battalora examined plaintiff again on November 29, 1960, when a slight right lumbar scoliosis and spasm in the low back muscles were noted, indicative of a painful condition in the back. The vertebral transverse process fracture had united. Dr. Battalora’s opinion at that time was that it would be advantageous to plaintiff to return to work. Dr. Battalora was then of the opinion that after six or eight weeks of working, all pain would disappear; while if plaintiff did not return to work, a progressive tightening of back muscles would make a return to work even more difficult. The evidence indicates that plaintiff did work, at least a few days a week, during much of this period.
Again on September 8, 1961, Dr. Bat-talora saw plaintiff, finding a right dorso-lumbar scoliosis and spasms in the low back muscles. X-rays showed no fracture of the transverse process of D-3. There was increased calcification of the superior anterior margins of that vertebra, attributed by Dr. Battalora to an aggravation by the trauma *843 of a pre-existing osteoarthritis. Dr. Bat-talora considered the scoliosis and spasm as related to the aggravation of the osteoarthritis, and thought plaintiff’s complaints fully justified.
On July 24, 1962, Dr. Battalora again examined plaintiff. A slight right dorso-lumbar scoliosis was noted, and spasm was present in the low back muscles. However, for the first time Dr. Battalora found spine movements through normal limits, and straight leg raising through ninety degrees, without causing pain. At that time Dr. Battalora concluded that plaintiff “should he able to get back to his previous type of occupation.” He considered the scoliosis due to the osteoarthritis; and from X-ray examination and the various movement tests concluded that the aggravation of the osteoarthritis caused by the injury had completely subsided. The back muscle spasm he attributed to a postural stimulus at this time, since he could find no disabling lumbar condition. He found no restriction or lack of motion.
As a result of his conclusions of his examination of July 24, 1962, compensation payments to plaintiff were terminated about a month later, on September 6, 1962.
Dr. Battalora saw plaintiff once more, on November 29, 1962. Spasm was present in the low back muscles. By this time plaintiff had some cervical osteoarthritis and a Horner’s syndrome, which Dr. Battalora testified could not be associated with the lumbar injury. On no previous occasion had plaintiff had similar complaints; and Dr. Battalora’s conclusion was that these complaints, if caused by the trauma some two years earlier, would have manifested themselves within a few weeks of the injury.
Defendant also presented the testimony of Dr. Karr to the effect that he could find no neurological condition in plaintiff; that he did not feel there was any serious spinal condition as early as January, 1961; and that at that time plaintiff was capable of performing the work of a sheet metal worker.
We believe it appropriate to Jiote, ás dicf-the District Judge in his reasons for judgment, that plaintiff’s past work and earnings record strongly suggests that he would be doing the work and earning the pay óf a sheet metal worker today, if he did not actually feel himself incapable. However, from the evidence in the record before us, we, like the District Judge, are unable to find any disability or incapacity resulting from plaintiff’s lumbar spine condition. The difficulties he experiences from his cervical spine, and the Horner’s syndrome he has, may very well disable him totally and permanently. But not only has plaintiff not shown that these conditions result from the lumbar injury; rather, the preponderance of the evidence establishes that they were not the result of the injury.
Plaintiff insists, relying on Johnson v. Atlantic & Gulf Stevedores, Inc., 102 So.2d 518 (La.App.1958), that because he is in fact disabled he is entitled to compensation regardless of his inability to prove the exact medical cause of his disability. The Johnson case involved a claimant who was in fact disabled after an industrial accident, without any other apparent cause of his disability; and under those circumstances he was held entitled to compensation in spite of, perhaps, some doubt as to the medical explanation for his disability. This Court there said, “* * * [t]he test is disability vel non and not the nature of the injury.” The test is the same in the case before us now. The difference here present is that the disability of plaintiff is not the result of the lumbar injury, but rather of the intervening cause, the cervical problems arising two years after and unrelated to the lumbar injury.
The judgment appealed from is therefore affirmed.
Affirmed.