SAMUEL, Judge.
This is a suit in workmen’s compensation for total and permanent disability benefits or, alternatively, for the maximum compensation allowable under the act. The defendants, plaintiff’s employer and its compensation insurer, have suspensi ve.ly appealed from a judgment awarding compensation in the amount of $35.00 per week for a period not in excess of 300 weeks effective January 11, 1962, plus judicial, interest, . subject to a credit for all compensation payments made to the plaintiff during that period. Plaintiff has not answered the appeal.
*717 On January 11, 1962 plaintiff, a heavy construction carpenter, strained his low back and right groin while handling a jack. He was placed on light duty. A second accident occurred on February 5, 1962 while he was putting up sheets of plywood on the second floor of a building under construction. A strong gust of wind caused him to fall and twist his back, again injuring the back and right groin.
Plaintiff was examined by Dr. Dabney Ewin, a general surgeon, on February 7, two days after the second accident. His ■chief complaint at that time was of pain in Tiis right lower thigh and hip area. He was .given medicine and ultrasound treatments. The treatments did not produce satisfactory results; plaintiff continued to have the pain. Fie was referred to Dr. G. B. D. Berkett, an orthopedic specialist, for examination on February 20. On April 26, plaintiff returned to Dr. Ewin with the information that Dr. Berkett had discharged him and he wanted to go back to light work. At that time plaintiff had only slight pain lo■cated anterior to the right hip joint. He was discharged by Dr. Ewin but returned ■on May 8 with the information that he had not been back to work due to the fact that walking some fifteen blocks from his home to work had caused pain about his upper ■right thigh. Dr. Ewin again referred him "to Dr. Berkett and did not participate in his '.treatment any further. After he had been .•seeing plaintiff for some time Dr. Ewin ob.served that his right thigh had diminished in circumference by approximately one-half .inch. Other than this atrophy he was unable to find anything organically wrong or any objective reason for the pain of which plaintiff complained. Accordingly, Dr. Ewin was of the opinion that plaintiff could ■return to his usual occupation.
On February 20, Dr. Berkett found an •excellent range of motion in plaintiff’s back .and ho apparent atrophy of the thigh or •calf. His chief -difficulty was a residual pathology in the right hip joint. Dr. Ber-Ikett did note that plaintiff had pain on movement of the right hip and that rotation was exceedingly painful. X-rays of the lumbar spine and hip joint were negative other than some lipping of the vertebrae. On the basis of this examination the doctor concluded that if plaintiff had had any back injury it had subsided. He felt that the residual pathology may have been caused by a sprain of the right hip and recommended diminished weight on the right lower extremity and injection of hydro-cortisone in the right hip joint.
Dr. Berkett again saw plaintiff on March 21. At that time he still complained of pain in the hip and walked with a limp. Rotation of the hip was painful and hydro-cortisone was again injected in the hip joint. Plaintiff obtained some immediate relief. He was next seen by Dr. Berkett on April 2 when he still complained of pain when bearing weight on his right hip. However, he seemed improved at that time. When he returned again on April 9 he was much worse. He walked with a marked limp and, while the doctor could find no atrophy of the thigh in February on the first examination, on April 9 he had one-half or three-quarters of an inch of atrophy of the right thigh as compared with the left, diminished extension of the right hip and pain on flexation and abduction. Although he was unable to ascertain the cause thereof, Dr. Berkett did feel that something was wrong in the right hip joint. On April 23 plaintiff had a half inch diminished circumference of the right thigh and a quarter inch of the right calf. He still' complained of pain but at that time the doctor felt that he could return to his previous occupation. He was seen again on- May IS and complained of pain “over the anterior aspect of the right thigh and the trochanteal region” and pain upon walking. After another examination Dr. Berkett referred him to Dr. Dennis Rosenberg, a thoracic and cardiovascular surgeon, for evaluation as to possible vascular involvement. Dr. Berkett felt 'that if there was no- vascular -'involvement 'he was at a loss to explain fhe cause of the pain. • Other than such an involvemerit he *718 made no objective findings which he could consider disabling. This doctor did not see plaintiff after the visit of May 15. From his objective findings, and only from an orthopedic standpoint, he was of the opinion that plaintiff could return to his work. But as a result of the pain of which plaintiff still complained, which pain Dr-. Berkett was unable to account for, he was not certain whether or not plaintiff could return.
Dr. Rosenberg saw the plaintiff on May 16, 1962 for an evaluation of his peri-vascu-lar system. He concluded that whatever pain plaintiff had could not be explained on a vascular basis.
At a pre-trial conference the trial judge suggested that plaintiff see another doctor. In compliance with the suggestion plaintiff saw Dr. Hyman R. Soboloff, an orthopedic specialist, on Febraury 2, 1963 (a year after the accidents) and four times thereafter. Dr. Soboloff concluded that plaintiff was suffering from meralgia paraesthetica, an irritation of one of the nerves, the anterior femoral cutaneous, which comes out of the back and goes over the iliac crest and down the front of the thigh. As a result of his first examination Dr. Soboloff felt that plaintiff could do simple carpentry work with discomfort and perhaps pain but that he could not do heavy construction carpentry with its attendant climbing and working on scaffolding. The doctor administered a series of injections of carpacane and hydro-cortisone. Orthopedically speaking, improvement was noted as the injections were administered and on the date of Dr. Soboloff’s last examination, May 6, just three days before trial, this doctor -was of the opinion that there were no objective signs of residual meralgia paraesthetica and no further orthopedic treatment needed. His final conclusion was that, from an orthopedic standpoint alone, plaintiff could return to his former occupation and perform his work as a heavy construction carpenter for two or four weeks with some pain and discomfort. At the end of that time he should then be free of the pain and discomfort. However, Dr. Soboloff was also of the opinion that there was something wrong with plaintiff’s thigh, other than from an orthopedic standpoint, which, because of the time lapse, should be further investigated on a vascular basis, despite Dr. Rosenberg’s examination and negative findings, of which Dr. Soboloff was aware.
Drs. Ewin and Berkett both testified that plaintiff did not have meralgia paraesthetica while he was under their treatment or at any time they saw him.
Plaintiff was 59 years of age at the time of trial and had worked steadily as a carpenter for 29 years. He had obtained workmen’s compensation on only one other occasion, about four years previously, and then for an injured finger. He had been in good health and had had no trouble with his hip prior to the accident for which he now seeks compensation. He testified that the injections he received did afford him some relief but that his hip is still painful especially when he puts weight on his right leg. If he walks as much as 4 to 6 blocks the pain becomes so severe he has to stop, take the weight off the right leg, and wait for the pain to subside. The pain is not continuous; it is brought on by standing or walking and has persisted and been present since the accidents. He cannot perform his work as a heavy construction carpenter because that work involves climbing and standing for long hours. After his compensation payments had been stopped and after he attempted to return to work for the defendant employer, he obtained another job doing light carpentry work requiring no lifting or moving about; he worked standing at a bench. After 5 or 6 weeks he had to give up that job because standing on his leg during the work day resulted in severe pain.
Defendants make the following contentions: (1) Plaintiff has recovered from the injuries of which he complains and has received full compensation for the period of disability resulting therefrom; (2) The *719 meralgia paraesthetica condition was not caused by the accidents of January 11 and February 5, 1962; and (3) Alternatively, plaintiff cannot receive compensation beyond May 6, 1963 when his own doctor, Soboloff, found he was no longer disabled and could return to work. We are unable to agree with any of those contentions.
Although a compensation claimant bears the burden of proof, the mere fact that he is unable to classify the exact type of injury he has sustained does not preclude a recovery of compensation; the test is disability vel non and not the nature of the injury. Jackson v. Bituminous Casualty Corp., La.App., 153 So.2d 585; Johnson v. Atlantic and Gulf Stevedores, Inc., La.App., 102 So.2d 518.
And where an injured employee cannot perform his customary and usual duties without suffering substantial pain and discomfort he is considered disabled under the workmen’s compensation act. Jackson v. Bituminous Casualty Corp., supra; Harris v. A. A. A. Foundation, Inc., La.App., 140 So.2d 696; Schram v. Lake Charles Ready-Mix, Inc., La.App., 125 So.2d 213; Monk v. Louisiana Forestry Commission, La.App., 124 So.2d 351.
Here plaintiff’s complaints of pain in the right hip area have been consistent since he sustained the injuries. His subjective complaints and the objective findings of the physicians (we particularly refer to atrophy) were compatible at all times. And both Dr. Berkett, for the defendants, and Dr. Soboloff, for plaintiff, recognize that, beyond the usual scope of orthopedics, something more is wrong in the area of plaintiff’s right hip. The trial judge closely observed his demeanor and manner of walking in the courtroom and concluded that plaintiff’s testimony was frank and truthful and that he was disabled as a result of the accidents.
From all the evidence we are convinced, as was the trial judge, that plaintiff cannot resume his former occupation without sustaining not only substantial but severe pain and that this condition, whatever its medical classification may be, was caused by plaintiff’s industrial accidents of January 11 and February 5, 1962 and has continued and persisted since those accidents.
It is apparent from the expert testimony that medical science knows very little about the condition it calls meralgia paraesthetica. The experts in the instant case are in disagreement as to whether the condition can be caused by trauma and, if it can be so caused, how soon after the trauma it manifests itself. It is quite possible, as argued by appellants, that plaintiff did not have meralgia paraesthetica when he was seen and treated by Drs. Ewin and Berkett and that plaintiff has failed to prove a causal connection between his accidents and the meralgia paraesthetica diagnosed by Dr. Soboloff a year after those accidents. But even accepting this possibility and failure to prove as facts, we remain of the opinion that plaintiff is entitled to the compensation awarded by the trial court judgment.
For, as we have already found, as a result of his accidents plaintiff suffers a condition which prevents him from resuming his work without substantial and even severe pain. This is true even in the absence of meralgia paraesthetica. If plaintiff did not have meralgia paraesthetica while being seen and treated by Drs. Ewin and Berkett, the fact remains that since his accidents and continually before, during and after he had meralgia paraesthetica he suffered from the condition which then and now prevents him from doing his usual work without very substantial pain. Plaintiff’s doctor, Soboloff, did not testify without qualification, as defendants argue, that plaintiff was able to return to work on May 6, 1963. He did testify, and we accept that testimony, that on May 6, 1963 plaintiff was able to return to work, with some temporary pain and discomfort, from an orthopedic standpoint only. His testimony goes no *720 further and, confined within its proper limits, neither does the testimony of Dr. Berkett.
The judgment appealed from is affirmed.
Affirmed.